## Ellen P. Vail, Impl'd, etc.

### v.

## Joseph W. Drexel.

1. STATEMENT.—Drexel entered into a contract with the Vails to sell them certain lands in Chicago, at a certain price. By the terms of the agreement, the Vails were to subdivide the land and sell upon certain terms, Drexel to give to the purchasers contracts for a deed. The Vails were to retain ten per cent. of the cash received, to be used in advertising, etc., and the contract was to be performed within a certain period, time being expressly made of the essence of the contract. The contract was extended and modified from time to time. The Vails failing to perform, Drexel brought his bill, praying that the contract be decreed null and removed as a cloud upon his title; that the defendants be enjoined from receiving further payments upon outstanding contracts, or making new sales, and that they be required to pay the balance due complainant by a certain day, or be foreclosed, etc. A receiver was appointed; reference to a master to take an accounting, and a decree-confirming the master's report, and ordering defendants to pay the balance due within sixty days, etc.

2. FORFEITURE IN EQUITY.—The original bill was in substance a bill to decree a forfeiture of defendant's rights under the contract. No offer was made to convey the land upon payment of the balance found to be due, nor for an assignment of the outstanding contracts. Compensation and not forfeiture is the doctrine of equity, and it is a rule of universal application that courts of equity will never enforce either a penalty or a forfeiture. A party who relies upon a forfeiture must seek his remedy in a court of law.

3. CONTRACT FOR SALE OF LAND—LIEN OF VENDOR.—Under an agreement for the sale of land, the vendor has an equitable lien on the land for the unpaid purchase-money. In equity the vendee is considered the owner, and his estate is attended by nearly all the incidents of actual ownership. In respect to this lien the purchaser under an executory agreement stands in no other or different footing from that of a grantee under a conveyance of the legal title. The lien is *in rem*, and the vendor may come into a court of equity the first instance to enforce it, without first resorting to a suit at law to recover the amount due.

4. RIGHTS OF VENDOR UNDER THE CONTRACT IN THIS CASE.—In this case, if the vendor chose to come into a court of equity rather than assert his rights at law, he was entitled to an accounting in respect to the payments and the balance due, and a decree for the sale of the lands, or, upon a proper showing, to a decree of strict foreclosure, though the ordinary mode of enforcing the lien should be by a sale of the property.

5. DECREE FOR PAYMENT—LIMITING TIME OF PAYMENT.—The decree in this case was in the nature of a strict foreclosure, and the time in which the defendants were required to make payment—sixty days—or be foreclosed, was too short.

6. DECREE SHOULD HAVE REQUIRED CONVEYANCE OF LAND UPON PAYMENT.—The payment of the balance of the purchase money by the vendees, and the conveyance of the land by the vendor, were concurrent acts, and the decree should have required such conveyance upon payment being made.

7. ADMINISTRATOR OF VENDEE NOT A NECESSARY PARTY.—The statute providing for the sale by the administrator of a deceased, vendee, of lands held by him under an executory contract of sale, has no application here. The vendor had a specific lien upon the land, and if he was satisfied to rely upon that for payment of the money due him, he had the right to waive any claim upon the general assets of the estate of the vendee.

ERROR to the Circuit Court of Cook county, the Hon. E. S. WILLIAMS, Judge, presiding. Opinion filed November 11, 1881.

On the 8th day of November, 1869, Joseph W. Drexel, the defendant in error, then of the city of Philadelphia, entered into a written agreement with Asa Vail and Nicholas J. Vail, of Chicago, whereby Drexel agreed to sell to said Vails 320 acres of land lying in the town of Lake, in Cook county, for the agreed price of $168,000, to be paid in installments within three years from the first day of January, 1870, in the manner specified in the agreement.

The Vails were to subdivide the land and sell the same at not less than $600 per acre, and for not less than twenty per cent. of the sale price in cash at the time of making sales; and as fast as sales were made, Drexel was to give the purchasers contracts for a deed. The Vails were to bear the expenses attending the subdivision and sale of the property, and all money received by them on sales was to be paid over to Drexel as fast as received; but they were allowed to retain ten per cent. of the amount of the sale, to be expended in improving the property, advertising, &c. The ten per cent. so retained was not to be considered as payment on the purchase price, but in the event that the contract should become forfeited, or if for any reason the Vails should be unable to carry it out, the ten per cent. retained by them was to be taken and considered as a fair commission on sales made, and as full payment for all services and disbursements made by them.

The agreement provided that if the Vails should not, before the close of the year 1870, make sales to the amount of $40,-

000, and pay over the money (except the ten per cent.), and deliver to Drexel the contracts for the deferred payments as soon as executed by the purchasers; or if the cash payments to Drexel in the year 1870 should not amount to $10,000, exclusive of $1,825, to be paid in lieu of interest for that year, then the agreement was to be null and void, and Drexel was to retain the moneys and contracts of sales that had come to his hands, and the Vails were to own and retain the amounts which they might become entitled to retain as ten per cent. on the sales made.

The agreement further provided, that if the Vails should not make sales during the year 1871 to the amount of $70,000, or if the cash payments to Drexel in that year should not aggregate the sum of $21,000, exclusive of interest payments, the agreement was to become void.

By the eighth clause in the agreement, it is provided that if the Vails shall not before the expiration of the year 1872, have paid over to Drexel the full sum of $168,000, with interest as stipulated, that then and from thenceforth the contract was to become null and void. Time was expressly made of the essence of the contract, and any lack of promptness in fulfilling any of its conditions was to work a forfeiture, and to determine all rights under it of the party in default.

There were several extensions and modifications of the contract, the first of which, bearing date Nov. 15th, 1870, provided that if the sales of 1870 should fall short of $40,000, the contract should not on that account be forfeited, but the sales of 1871 should be increased by as much as the sales of 1870 fell short; the rate of interest was raised from six to seven per cent.; and it was also agreed that if the cash payments made by the Vails in 1870 should not amount in the aggregate to $11,825, the contract should not for such failure be forfeited, but the deficit should be made up in 1871. And there was the further stipulation, that if the modifying agreement should go into effect, it should be taken as a part of the original contract, and that it was to change the terms of the original only as specifically set forth, and that any failure to comply with the original contract as modified, should work the same result as to forfeiture as was provided for in the original contract.

A second modification was made December 22, 1871, to the effect that any deficiencies in the amounts provided for in the original contract, as already modified, to be paid by the Vails, or in the amount of sales to be made during the year 1871, should be added to the amounts respectively required to be sold and paid during 1872; and said original contract was not to be forfeited on account of such deficiencies, but was to remain unchanged in all other respects.

On the 15th day of November, 1872, the contract was extended for one year, from January 1, 1873, to January 1, 1874, on condition that the Vails should pay interest at the rate of eight per cent. per annum, on all amounts due and unpaid after January 1, 1873.

February 2, 1874, by another and final modification, it was agreed to extend the time of performance until January 1, 1875, on condition of the payment of interest at ten per cent. per annum on all sums due January 1, 1874. In other respects the contract to remain unchanged.

The Vails entered upon the performance of the contract, subdivided the property, and commenced making sales.

In August, 1871, Asa Vail, with the consent of Drexel, sold and assigned his interest in the contract to Nicholas J. Vail. Nicholas J. Vail died intestate May 8th, 1874, leaving a widow and heirs-at-law, as stated in the bill, and they are made parties defendant to the suit. Letters of administration on the estate of Nicholas J. Vail were applied for, but, so far as appears, none were ever issued.

There was paid on the contract, according to the statement of the defendant in error, $71,534.04, of which $5,416.88 was paid in 1870; $15,104.61 in 1871; $25,787.50 in 1872; and $25,225.04 in 1873 and 1874. The amount as stated by the plaintiff in error is somewhat larger. The Vails also expended in improvements, advertising, etc., about the sum of $29,000.

Drexel filed this bill March 23, 1875, making the heirs of Nicholas J. Vail, and Charles L. Cherry parties defendants, and praying that the contract may be decreed to have become null and void, that the same may be removed as a cloud upon the complainant's title, and that the defendants may be en-

Vail v. Drexel.

joined from receiving further payments on outstanding contracts, or making new ones for the sale of any of the land, and from meddling or interfering with said property. There was also a prayer for general relief. Answers were filed, proofs taken, and a receiver was appointed to take possession of the property and collect the moneys due or to become due on outstanding contracts, and the defendants were required to deliver to the receiver all contracts in their possession.

The complainant subsequently, by leave of the court, amended his bill by adding a prayer that unless the defendant Vails, or some of them, within a time to be fixed by the court in its final decree, pay the balance due on the contract, to be determined either on an accounting, or from the proofs on the hearing, that they " be forever barred and foreclosed from setting up any claim to any interest or equity in said premises by reason of said contract. "

The case was referred to a master, who reported that there was due to the complainant on the contract, $159,629.13. The court confirmed the report and rendered a final decree that unless the amount found due by the master was paid within sixty days from the date of the decree, that then and from thenceforth the said contract should be null and void, and the defendants be forever barred, foreclosed and enjoined from asserting any claims by reason of said contract to the land described in the bill.

Mr. Robert Rae and Mr. James W. Beach, for plaintiffs in error; that the administrator of the vendee was a necessary party defendant, it being his duty to complete the contract in the manner pointed out in the statute, cited Rev. Stat. 1874, 124, § 110.

The title of the vendor was that of mortgagee holding the title to secure payment of the balance: Lucas v. Harris, 20 Ill. 165.

Bills to remove a cloud or quiet title can be maintained only when the complainant is in possession, or when he claims to be the owner, and the lands are unoccupied and unimproved: Hardin v. Jones, 86 Ill. 313.

An answer under oath is to be taken as true: Payne v. Frazier, 4 Scam. 55; Knapp v. Gass, 63 Ill. 492; Stone v. Moore, 26 Ill. 165.

The bill, having no equity, is incapable of amendment: Puterbaugh v. Elliott, 22 Ill. 157.

Tender of a deed of the land should have been made before filing the bill: Sanford v. Emory, 34 Ill. 468; Murphy v. Lockwood, 21 Ill. 615; Headly v. Shaw, 39 Ill. 354; Runkle v. Johnson, 30 Ill. 328; Peck v. Brighton Co. 69 Ill. 200.

The doctrine of equity is compensation, not forfeiture: Mix v. Beach, 46 Ill. 311; Peck v. Brighton Co. 69 Ill. 200.

The court was not warranted in granting a receiver and injunction: First Nat. Bank v. Gage, 79 Ill. 207.

On filing the answers the injunction should have been dissolved as matter of course: Parkinson v. Trousdale, 3 Scam. 367.

A solicitor for complainant should not have been appointed receiver: Baker v. Backus, 32 Ill. 82; Benneson v. Bill, 62 Ill. 408.

The answer having disclosed the existence of other persons interested in the suit, they should have been made parties, and it was error to proceed to a decree without them: Leitze v. Clabaugh, 59 Ill. 136; Winkleman v. Kiser, 27 Ill. 21; Woolner v. Wilson, 5 Bradwell, 439; Hopkins v. Roseclare Lead Co. 72 Ill. 373.

The time allowed by the decree in which to make payment was too short: Farrell v. Parlier, 50 Ill. 274.

The holders of the beneficial interest in the mortgage should have been made complainants: Winkleman v. Kiser, 27 Ill. 21; Moore v. School Trustees, 19 Ill. 88; Hahn v. Huber, 83 Ill. 243.

The contract was the only evidence of the debt; and it being found among the papers of the vendee after his death, it is *prima facie* evidence of payment: 2 Greenl'f Ev. § 527; Richardson v. Cambridge, 2 Allen, 118; Johnson v. Nations, 26 Miss. 147; Sutphen v. Cushman, 35 Ill. 186.

Messrs. HUTCHINSON & LUFF, for defendant in error; that the heir and not the administrator is the proper party defend-

Vail v. Drexel.

ant, cited Smith v. McConnell, 17 Ill. 135; Ryan v. Duncan, 88 Ill. 144.

The legal title draws to it the legal possession, and where the possession is adverse or is relied upon in the absence of paper title, it must be actual and not constructive: Hassett v. Johnson, 48 Ill. 68; Jackson v. Berner, 48 Ill. 203; Morrison v. Kelly, 22 Ill. 610; City of Champaign v. McMurray, 76 Ill. 353.

When defendants take testimony and go to hearing on pleadings and proofs, they cannot in an appellate court object that the cause was not at issue: Webb. v. Ins. Co., 5 Gilm. 223; Jameson v. Conway, 5 Gilm. 227; Marple v. Scott, 41 Ill. 50; Corbus v. Teed, 69 Ill. 205.

The oath being waived in the bill, the answer has only the force of a pleading: Moore v. Hunter, 1 Gilm. 317; Willinborg v. Murphy, 36 Ill. 344; Wallwork v. Derby, 40 Ill. 527; Hopkins v. Granger, 52 Ill. 504; Adlard v. Adlard, 65 Ill. 212.

Time being of the essence of the contract, the vendor was entitled to a forfeiture without tendering a deed: O'Neall v. Wabash Ave. Church, 48 Ill. 349; Chrisman v. Miller, 21 Ill. 227; Cunningham v. I. C. R. R. Co. 77 Ill. 178; Bostwick v. Hess, 80 Ill. 138; Steel v. Biggs, 22 Ill. 643; Runkle v. Johnson, 30 Ill. 328; Wells v. Smith, 7 Paige, Ch. 22.

Payment of part of the purchase-money will not excuse a vendee from a strict compliance with his agreement as to remainder: Smith v. Brown, 5 Gilm. 309; Bishop v. Newton, 20 Ill. 177.   Morgan v. Herrick, 21 Ill. 481; Steel v. Biggs, 22 Ill. 643.

The appointment of a receiver is in the discretion of the court, and will not be interfered with on appeal: High on Receivers, §6; Reid v. Reid, 38 Ga. 24; Robenson v. Ross, 40 Ga. 375; Cohn v. Myers, 42 Ga. 46; Cookes v. Cookes, 2 De G. J. & S. 526.

The granting of a preliminary injunction is not subject of review in an appellate court: High on Injunctions, §11; Marble v. Bonhotel, 35 Ill. 240.

Where want of proper parties is apparent upon the face of

the bill, it should be taken advantage of by demurrer: Prentice v. Kimball, 19 Ill. 320; Deniston v. Hoagland, 67 Ill. 265.

The extensions of the contract constantly referred to the original agreement, and with that formed but one entire contract: Allen v. Cooper, 9 Shep. 133; Hasbrouck v. Tappen, 15 Johns. 200; Evans v. Thompson, 5 East. 193.

WILSON, P. J. The plaintiff in error has assigned the extraordinary number of sixty-three errors, and has made thirty-three points in his printed argument. The practice of thus unduly multiplying points cannot be commended. It is not only wholly unnecessary, but can subserve no useful end. On the contrary, it is an element of weakness in an argument, tending, as it does, to divert the mind from the more important and controlling questions arising in the case. In such a great number of points it is not unreasonable to assume that more or less of them are without any real foundation, and would be seen to be so by counsel upon proper consideration and study when making them; and besides, it ought not to be forgotten, when asking the court to investigate such a mass of points, that there is a limit to the endurance of even the judicial mind.

We shall not attempt to go over all the grounds relied upon by the plaintiff in error, but will confine ourselves to two or three, either of which we deem sufficient to necessitate a reversal of this decree.

The bill, as originally filed, was a bill praying that the agreement between Drexel and the Vails, for the sale of the lands, be declared null and void, by reason of the failure of the Vails to pay the balance due on the purchase money, and that the agreement be removed as constituting a cloud upon complainant's title. No offer was made to convey to the Vails the unsold lands upon their paying the balance due, nor to assign to them the outstanding contracts with purchasers, of which there were a large number, and upon which various amounts were due. The bill was in substance and effect a bill for a decree of forfeiture of all Vails' rights under the contract.

We are aware of no principle of equity law, nor have we been able to find any adjudicated case, which authorizes a bar-

Vail v. Drexel.

gainer of land to come into a court of chancery, after having received a part of the purchase money, and ask for a decree against the purchaser forfeiting the contract.    Compensation, and not forfeiture, is the doctrine of equity.    While courts of equity, not less than courts of law, recognize the right of parties to a contract to stipulate for penalties and forfeiture, and while, on a proper showing, courts of equity will always relieve against forfeitures, it is a rule of universal application that they will never enforce either a penalty or a forfeiture.    2 Story Eq. § 319; Livingstone v. Tompkins, 4 Johns. Ch. 431; Popham v. Bampfield, 1 Vern. 339; Hornburg v. Baker, 1 Pet. 232, 236.

A party who seeks the enforcement of a penalty, or relies on a forfeiture, must seek his remedy in a court of law, and not in a court of equity, where he is only entitled to relief upon an equitable basis.    If, therefore, complainant's case had been left to stand upon the bill as originally filed, seeking only a cancellation of the agreement, and the forfeiture of complainant's rights thereunder, the court might properly have refused to entertain it for want of equity, apparent on the face of the bill.

But by the amendment, though only in the prayer of the bill, the case assumed a different aspect.    The amendment recognized the contract as still in force, and treated it as a subsisting security for the balance due on the unpaid purchase money.    It asked the court to fix a time within which the defendants " should pay all such sums of money accrued, or to accrue, due under and by reason of said contract, to be determined on an accounting, etc.; " and prayed that in default of such payment, within a time to be fixed by the court, the defendants should thereafter be forever barred and foreclosed from asserting any interest in or claim to the property under the contract or its amendments.    Acting upon this prayer, the court decreed the payment of the money within sixty days, and that in default thereof, the defendant's rights should be foreclosed as prayed.    Thus, the complainant by his bill, and the court by its decree, treated the contract as still subsisting, but liable to be defeated in the future.

This brings us to examine briefly the proper construction to

Vail v. Drexel.

be placed upon a contract of this nature, and the rights of the parties to it in respect to their remedies in a court of equity. It is not necessary to determine whether the parties to this agreement occupy the technical relation to each other of mortgagor and mortgagee, or whether the agreement is to be regarded as a conditional sale.

Under an agreement for the sale of land, the vendor has an equitable lien on the property for the unpaid purchase money. In equity the vendee is considered the owner, and his estate is attended by nearly all the incidents of actual ownership. As between the vendor and vendee, the latter is regarded as a trustee for the former for the purchase money, and the equitable lien of the vendor exists in all cases unless there is either an express or an implied agreement to waive it. In Story's Equity, Vol. 2, § 1217, it is said: " But there are liens recognized in equity whose existence is not known, or obligation enforced in a court of law, and in respect to which courts of equity exercise a very large and salutary jurisdiction. In regard to these liens it may be generally stated that they arise from constructive trusts. They are, therefore, wholly independent of the thing to which they are attached, as a charge or encumbrance, and they can be enforced only in a court of equity. * * * Of this we have a strong illustration in the well known doctrine of courts of equity, that the vendor of land has a lien on the land for the amount of the purchase money, not only against the vendee himself, and his heirs and other privies in estate, but also against all subsequent purchasers having notice that the purchase money remains unpaid; to the extent of the lien the vendee becomes trustee for the vendor." See also, Greene v. Greene, 1 Johns. Ch. 308; Clark v. Hall, 7 Paige, 382; Bradley v. Bosby, 1 Barb. Ch. 125; 3 Lead. Cas. in Equity, 74 and notes; Thompkins v. Seeley, 29 Barb. 213; Fisk v. Potter, 2 Keyes, 64; Champion v. Brown, 6 John Ch. 398. In respect to this lien the purchaser under an executory agreement stands in no other or different footing from that of a grantee under a conveyance of the legal title.

The lien is *in rem*, and the vendor may come into a court of equity in the first instance to enforce it, without first resorting

Vail v. Drexel.

to a suit at law to recover the amount due.  2 Story's Eq. § 1216 b. in note.

In the light of these principles the complainant's remedy, if he chose to come into a court of equity rather than to stand, on his rights at law, was plain and simple.  He had a right to an accounting in respect to the payments and the amount of the balance due, and a decree for the sale of the lands; or upon a proper showing, a decree of strict foreclosure; though ordinarily, the mode of enforcing a lien in equity should be by a sale of the property to which it is attached.  2 Story's Eq. § 1217.

The decree which the complainant obtained was in the nature of a strict foreclosure.  As such we do not think it was warranted under the proofs.  The Vails had entered upon the performance of the contract, and had paid upwards of seventy thousand dollars of the purchase-money, and nearly thirty thousand dollars for improvements on the land, and other expenses incident to making sales.

Nicholas J. Vail, who had succeeded to all the rights of Vail & Son under the contract, had died, and at the time of his death was not in default, the time of payment having been extended by the last modification until January 1, 1875.  There was no proof that the unsold land and outstanding contracts were a scanty security for the unpaid balance due, nor that Vail's estate was insolvent.  Under these circumstances no proper case was made for a strict foreclosure.  But aside from this, and conceding a proper case had been made, the time limited by the decree for the payment of the money was only sixty days.  This was not sufficient.  The Supreme Court has repeatedly held that in case of an irredeemable sale of real estate not less than ninety days should be given, and when the amount is large, a longer period.  Link v. Architectural Iron Works, 24 Ill. 551; Mills v. Heeney, 35 Ill. 173; Farrell v. Parlier, 50 Ill. 274; Cronan v. Frizell, 42 Ill. 319; Claycome v. Cecil, 27 Ill. 497; Moore v. Bracken, Id. 23; Strawn v. Coggswell, 28 Ill. 457; Kinzey v. Thomas, 28 Ill. 502.  Under the English practice six months was given, and if the debt was large the court usually extended the time for another six

months. It is only in exceptional cases that a strict foreclosure will be allowed, and all the conditions rendering such a decree proper should be strictly complied with. In the present case the amount decreed to be paid was very large—$159,000 and upwards—which the defendants were required to pay in sixty days. They were resting under an injunction against making any sales of the land, and from collecting anything on the outstanding contracts with purchasers, on which it appears there was due at the time the bill was filed about $40,000. Under these circumstances not less than six months should have been given for payment; and if the court had allowed a year, it would not have been deemed unreasonable.

Another valid objection to the decree is the absence of any provision requiring the complainant, in case the money should be paid within the time limited, to convey to the defendants, or to such of them as were entitled thereto, the lands remaining unsold, and to assign and turn over to them the outstanding contracts with purchasers. As was said in Peck v. The Brighton Company, 69 Ill. 200, "The payment of the balance of the purchase-money, and the conveyance of the land were concurrent acts." Upon the payment of the money the defendants were entitled to both the land and the contracts, but as the decree stood, they would have been compelled to resort to further proceedings, after paying the money to obtain them. This they should not have been required to do. The contracts had been placed in the hands of a receiver by order of the court, and were still in his hands when the decree was rendered, and the plaintiff in error was a non-resident of the State.

The decree should therefore have required the complainant upon receiving his money to execute proper conveyances of the land, and to assign and turn over the outstanding contracts.

.It is insisted by the plaintiff in error that the administrator of Nicholas J. Vail should have been made a party to the suit. It would be sufficient to say that the record fails to show the appointment of an administrator. Letters were applied for, but so far as appears, none were issued. But aside from this the statute relied on by the plaintiff in error in support of his position, is not susceptible of the construction claimed for it.

It provides, in substance, that where land is partly paid for, and he who is seized of the equitable estate dies, the administrator, upon the order of the county court, may sell such real estate, and the money arising therefrom shall be assets in the hands of the administrator; or he may complete the payment for the land, in the name of the heirs, out of the proceeds from the sales of the personal property.

If the persons entitled to administration had taken out letters, it would have been proper to have made them parties. The defendant in error might also, at the proper time, have taken out letters as a creditor of the estate, but he was under no legal obligation to do so. He had a specific lien upon the land covered by his contract, and if he was satisfied to rely upon that for the payment of the money due to him, he had the right to waive any claim upon the general assets of the estate. The statute was merely designed to authorize the administrator, under the direction of the court, to use the moneys arising from the sales of personal property to complete the payment due from the decedent on a contract made by him while living, for the purchase of land, if he should deem it beneficial to the heirs to do so. It gives no new remedy to the vendor of land, and by no proper construction can it be held to take away any he had before its passage.

Numerous other grounds for a reversal of the decree were urged, which we shall not stop to consider. The decree is reversed and the cause remanded to the court below for further proceedings, not inconsistent with the views herein expressed.

Reversed and remanded.