# CITY OF BLOOMINGTON ET AL.
## v.
# WILLIAM P. BROPHY.

*Real Property—Forcible Detainer—Title—Evidence—Entry by Owner—Possession by Another.*

1. In a suit of forcible detainer, evidence as to title, introduced merely for the purpose of showing the character or extent of a possession, may properly be considered.

2. The owner of land, having a present right of immediate possession, may enter the same in a peaceable manner, though occupied by another, without becoming by reason of such entry a trespasser.

[Opinion filed February 14, 1890.]

APPEAL from the Circuit Court of McLean County; the Hon. A. SAMPLE, Judge, presiding.

Mr. A. E. DEMANGE, for appellants.

Messrs. KERRICK, LUCAS & SPENCER, for appellee.

CONGER, J.    This was an action of forcible entry by appellee against appellant and its street commissioner, for entering upon a strip of ground forming a part of Seminary avenue in the City of Bloomington.

In 1855 William T. Major laid out Major's Seminary Addition to the City of Bloomington, and had it properly certified and recorded under the provisions of the statute of 1845. By the plat Seminary avenue was laid out sixty feet wide, from Center street to the C. & A. R. R.; Major owned all the land both on the north and south sides of Seminary avenue. He and his grantees sold the lots in Major's Seminary addition fronting north on Seminary avenue as platted, and they are now owned by third parties who have built dwellings and other improvements thereon. Until the year 1887, the land north of Seminary avenue was used as a pasture by Major

and his heirs, and an old board fence stood between it and a part of Seminary avenue. At Center street the fence stood south of a line fifty-five feet north of the south line of Semi-nary avenue and extended west in a direction a little north of west until, near the C. & A. R. R., it intersected a line sixty feet north of the south line of Seminary avenue as platted. In other words, at Center street the fence started south of the line claimed by plaintiff, then ran in a northwesterly direction till it crossed the line claimed by plaintiff, thence in the same direction till it intersected the sixty-foot line or true line of the street as platted. The city had located a street railway in Seminary avenue, with its center line on the center of the sixty-foot street as platted, and had erected electric light poles, and set water hydrants on the north side of the street, so that if five feet were taken off of the platted streets the poles and hydrants would stand in the sidewalk space on the north side, but not within the disputed five-foot strip. The water main and hydrants were laid and set in 1875, when one of the owners of the ground north of the old fence was mayor of the city.

In 1887 plaintiff, with others, purchased the pasture of Major's heirs and caused it to be platted into lots and streets and showing Seminary avenue by their plat to be only fifty-five feet wide. This plat was called Walnut Hill Addition. In some way the approval of the city council was secured for this plat and it was recorded with its certificates, thus attempt-ing to take five feet of ground from the north side of Semi-nary avenue as platted in Major's Seminary Addition, part of which had always been outside of the old fence and in the street as actually used, and causing to appear upon the deed records a second plat of Seminary avenue showing it only fifty-five feet wide, while the other, which had been of record for more than thirty years, showed it sixty feet wide.

The city council shortly afterward, upon petition of prop-erty owners on the south side of Seminary avenue, investi-gated the matter and adopted a report locating the true lines of Seminary avenue as platted in Major's Seminary Addition, and directing its city engineer to see that no sidewalks were

laid except on such lines. The plaintiff, some six or eight months prior to defendant's entry, took down the old fence. Prior to the entry the city had passed an ordinance for a brick sidewalk on the north side of Seminary avenue, and under the authority of that ordinance the defendant Ives, as street commissioner, with the city engineer, located the north line of the street by measurements, set stakes and ran a line from stake to stake on the north line of the street, and peaceably, without force or violence of any kind, excavated, graded and laid a bed of cinders for the walk. Plaintiff then commenced this action; defendant pleaded the statutory plea of not guilty and introduced evidence of the city's fee simple title to the street, the same as if justifying under a plea of *liberum tenementum* in trespass. Defendant's evidence of title and of the location of the north line of Seminary avenue, as platted in Major's Seminary Addition, was undisputed, but the court below refused to consider it, and held that the city's peaceable entry upon its own ground, although without actual force or violence, was an unlawful entry and a forcible entry, " within the legal meaning of that term." The court's ruling upon that point, and the judgment for plaintiff based thereon, is the error complained of.

We have appended to this opinion the statement of facts as presented in the brief of counsel for appellant, which will make the questions of law arising upon the record sufficiently clear.

It clearly appears from the record that the old fence upon the northern line of Seminary avenue did not stand exactly upon the northern line of the street, as contended for by either of the parties. At Center street it stood in the street if but fifty-five feet wide, but in running west, it tended northward until it crossed the north line of the street if regarded as sixty feet wide, thus leaving a part of the ground which appellee obtained possession of in the court below, south of the fence and beyond any possession claimed by him or his grantors as adverse to the appellant. In thus holding we think the court below erred. But the real questions are: First, in a suit of forcible detainer, is it competent for the

court to inquire into the title? It needs no citation of authorities to show that this can not be done, when the title as such is the issue, and both parties rely upon conflicting titles for success. But when introduced merely for the purpose of showing the character or extent of a possession, evidence of title may be shown.

As we said in Bloomington v. Graves, 28 Ill. App. 619, "Where the land is entirely vacant at the time of the alleged trespass or forcible entry, either party may introduce his title papers, because in such case title draws to it a constructive possession; and so, also, where it is actually occupied in part, the party so occupying may introduce them, because they fix by conclusive presumption the extent of his actual possession, which in either case is sufficient for all the purposes of this action."

In the present case it was proper to investigate the title of the city to the strip of five feet on the northern side of Seminary avenue to determine whether it had such constructive possession by virtue of its ownership as would draw to it the right of entry. Had appellee, however, set up and relied upon a conflicting title, the examination and decision of such a question would not have been proper in this form of action. He did not do this, but relied upon the fact that the city had never been in the actual possession of such strip, and this presents the second question, which is:

Can the owner of land, having a present right of immediate possession, enter the same in a peaceable manner, though occupied by another, without becoming, by reason of such entry, a trespasser? The Supreme Court in the cases of Dearborn Lodge v. Klein, 115 Ill. 177 and Lee v. Town of Mound Station, 118 Ill. 316, have clearly answered this question in the affirmative. The prior decisions of that court upon this subject are reviewed, and the law is so clearly laid down that no doubt could be entertained as to the law of this State upon the subject were it not for certain expressions used by the court in the late case of Gage v. Hampton, 127 Ill. 87, which would seem difficult to reconcile with the former decisions, although it is said in the latter case that the Dear-

born Lodge case has no bearing on that, and we therefore proceed upon the theory that the two former cases were not intended to be overruled or modified, and shall rest our conclusions upon them.

Upon the authority of these cases, we think the city, having the title to this strip of five feet, had a right to enter upon and take possession of it, provided it did so without force, and in a peaceable manner, and that the word "force" as here used means actual force, as contradistinguished from implied force, and that after Seminary avenue had been dedicated to the public to the width of sixty feet, any possession of such street or any part of it by appellee or his grantors, as against the public, "must have been in subordination to its rights. If lawful, it must have been in trust for the public, and to enable those representing the public to appropriate it to its distinct use at any moment they deemed advisable." Lee v. Town of Mound Station, *supra.*

It follows, we think, if we are not mistaken as to the holding of the Supreme Court, that the Circuit Court proceeded upon an erroneous view of the law, and its judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*