## GEORGE F. HARDING AND CHARLES E. MARBLE,

### V.

## JAMES H. SANDY AND A. C. SANDY.

*Trespass—Real Property—Evidence—Instructions—Practice.*

1. An owner may take from a wrongful holder his own, if he can do so without a breach of the peace.

2. The question whether it was error to refuse to instruct the jury in a given case to disregard the remark of an attorney in the case, made in his opening, upon the oral request of opposing counsel, will not be considered by this court. A written instruction to such effect should be asked.

3. This court deprecates the practice of assigning an excessive number of errors, and the making of briefs of undue length.

[Opinion filed December 7, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. WILLIAM J. AMMEN, for appellants.

Messrs. SETH F. CREWS and ERNEST DALE OWEN, for appellees.

GARY, J. This is an action of trespass by the firm of Sandy Brothers, as plaintiffs, against the appellants, Harding and Charles E. Marble.

Through the whole case it was tacitly assumed that Harding was the owner of a building fronting north called the Harding block, at 170 Madison street, in Chicago, and one witness spoke of it, without objection, as "Mr. Harding's building."

In the discussion of the case, we shall, therefore, assume that ownership to be undisputed.

A lease was made by Harding to Marble March 25, 1886, running to April 30, 1891, for "the rear portion of the sixth floor of the building No. 170 E. Madison street, consisting of all that portion in the rear of and on the east side of the rear light-shaft, with access thereto through the hallway leading from the front hall, and across to, and common use with other tenants of the building, of the freight elevator, but reserving for other tenants of the same floor access to and free use of the said elevator," and March 29, 1886, another lease was made by Harding to Sandy Brothers, also running to April 30, 1891, for "all that part of the sixth floor of the building known as Harding block, number 170 Madison street, in the rear of the central light-shaft (except the hall to lead to the rear rooms), extending to the third or rear light-shaft, and also that portion on the west side of said light-shaft, with free use of and access to the freight elevator, for use of light job printing." Both leases are under seal.

The appellees' brief says, and we assume truly, without searching for the evidence of the fact, that when those leases were made and possession taken under them, there was no

partition dividing the premises demised by the one lease from those demised by the other. The rear light-shaft, as appears by the plats in evidence, was a space inclosed mainly by glass, twenty feet long north and south, and ten and one-half feet wide east and west, nearly midway between the east and west walls of the building.

After possession was taken under the leases, changes were made; first by placing partitions, so that a space sixteen and one-half feet long, along the west wall of the building, and six feet wide, the north end of which space was the line of the south side of the rear light-shaft extended westwardly, was divided from the premises occupied by Marble, and left open to access at the north end to, and in fact was occupied by, the Sandy Brothers. Afterward, by another change, a partition was extended across the north end of that space, and the partition along the east side of it removed, so that Marble had access to, and occupied it.

That Harding had those changes made and the property of the appellees thereon removed to the premises covered by the lease to the appellees, during hours when they were not there, is one of the principal grievances of which the appellees complain.

That the lease to them demised nothing south of what was west of the rear light-shaft, can not be made clearer by multiplying words about it than it is by reading the lease, and no testimony that attempts to extend the operation of the lease by conversation between one of the appellees and Harding is admissible, or if admitted, has that effect. If the space described did not pass under the lease to Marble, it remained with Harding, and the result is the same to the appellees either way; they can not make Marble and Harding jointly respond in damages for what one or the other of them had a right to take. And this raises the question of law presented by the fourth instruction given on behalf of the plaintiffs as follows:

" 4. The court instructs the jury that a person in the actual peaceable possession of premises, is presumed to be there rightfully, and no one, not even the owner of the prop-

erty, has a right to go upon the premises and forcibly eject the person so in possession of the premises, or any part of them; or remove his property therefrom against his will, unless the person so entering has some legal process from a court of competent jurisdiction, authorizing him to do so, or consent of the one in possession."

The profession is slow to unlearn what in Brooke v. O'Boyle, 27 Ill. App. 384, we called "the heresy introduced into the law of this State in 1866." The case there cited, Fort Dearborn Lodge v. Klein, 115 Ill. 177, holds that the owner may take from a wrongful holder his own, if he can do so without a breach of the peace. That case is cited with approval in Lee v. Mound Station, 118 Ill. 304, and Gage v. Hampton, 127 Ill. 87.

The Appellate Court of the Third District in City of Bloomington v. Brophy, 32 Ill. App. 400, cited, understood and followed it as we understand it. The contrary doctrine, for some time held in this State, was first adopted by the Supreme Court in Reeder v. Purdy, 41 Ill. 279, and was there based, so far as authority was regarded, more upon Dustin v. Cowdry, 23 Vt. 631, than any other case, and that in turn was based upon Newton v. Harland, 1 Man. & Gr. 644, 39 E. C. L. 952, and that case has been long since overruled in England. See Low v. Elwell, 121 Mass. 309, and Souter v. Codman, 14 R. I. 119.

The key note of the prosecution of this suit was struck when the counsel for the appellees in his opening to the jury stated in an "artless Japanese way" that he "would prove that the defendant Harding was the meanest landlord in Chicago," and one of the errors assigned is that the court would not then upon an oral request instruct the jury to disregard the remark.

If then, or at the close of the case, a written instruction to that effect had been presented and refused, the question whether, under a statute requiring the court to instruct only in writing and as to the law of the case, the refusal was error, would have arisen; now it does not.

It is impossible to go through the mass of matter presented

by the appellants. They asked forty-five instructions of which eighteen were given as asked, seven as modified, and twenty were refused. They assigned twenty-nine reasons for a new trial, and assigned twenty errors here. Such a mode of presenting a case anywhere, either in the trial or an appellate court, is, as this court said in Vail v. Drexel, 9 Ill. App. 439, "an element of weakness."

A brief that is brief, which refers in every statement of fact to the page of abstract and record for its verity, is a great help; more than one hundred and fifty pages of discussion at large, is not.

Whether anybody, and if anybody, who, obscured the light, disturbed the possession, or encroached upon the easements which the appellees were entitled to under their lease, will, if the case is tried again, be subjects of inquiry, upon which nothing that could be said now would be of use.

Specifically for the error in the fourth instruction given on behalf of the plaintiffs, the judgment is reversed and the cause remanded.

*Reversed and remanded.*