## William S. Williams v. Robert Lindblom et al.

EQUITY PRACTICE—*Exceptions to a Master's Report Must be Specific.*—Exceptions to the master's report must be specific, and to make them so, the evidence which furnishes the ground of the exceptions should be required, by the party excepting, to be stated by the master; for otherwise the court will not wander at large into the evidence in order to ascertain whether, by possibility, the master was right or wrong in his conclusion.

2. SAME—*Exceptions—Duty of Master.*—If either party is dissatisfied with the master's decision, on requesting him, he should certify the evidence touching the items decided by him and excepted to, to the court, where his decision can be reviewed.

Bill to Settle a Partnership.—Error to the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed November 18, 1895.

ALBERT C. BARNES, attorney for plaintiff in error.

WILLIAM LAW, JR., and WILLIAM M. JOHNSON, attorneys for defendants in error.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

We have here a record of more than eleven hundred pages, of which more than eight hundred consist of the evidence taken by a master.

The bill was filed by Lindblom for the settlement of partnership accounts between himself, Williams, Miller and Van Kirk.

The master's report, finding amounts due to Lindblom and Van Kirk from Williams and Miller, fills forty-six printed pages. The evidence, without other order than the order of its introduction, accompanies the report.

We can do justice to the objections by Williams to that report—carried in before the master and renewed as exceptions before the court—only by setting them out from the abstract, as follows: "For that he found:

1.   That the firm of Robt. Lindblom & Co. commenced business July 2, 1883.

2.   That all the accounts of the old firm of Lindblom & Co. were continued as the accounts of the new firm.

3.   That the evidence shows an acquiescence of Williams in the contribution of assets of Lindblom & Van Kirk.

4.   That the contribution of capital stock by Lindblom & Van Kirk in the form of assets of the old firm was a practical compliance with the articles of co-partnership, and that such assets were practically sufficient to meet the capital they were to contribute; that such assets so contributed were good to the amount of capital they were to contribute.

6.   That so-called grain and margin accounts were the same as a cash item contribution toward their capital stock.

7.   That the contribution of such assets was the same as contributing cash to the capital of the firm and met the requirements of the co-partnership articles, and that

such assets were realized upon to the extent of Lindblom & Van Kirk's capital stock.

8. That the contribution of accounts not realized upon until many months after the formation of the new firm, should be regarded the same as cash contributed at the time of the formation of the firm.

9. That bad accounts contributed as assets can not be considered uncollected accounts when charged to speculative and private accounts of Lindblom & Van Kirk, even though the results of said charges brought their respective accounts in debt to the capital account of said firm.

10. That the balance due from customers, shown by the balance sheet, and never collected, was only $36,917.94, instead of $72,440.48.

11. For that the master failed to credit profit and loss account and charge the individual account of Lindblom & Van Kirk with the following items:

H. C. Miller, $787.50; N. Y. Grain, $3,719.19; H. C. Atkins, $1,168.75; C. T. Wetherell, $2,431.25; L. C. Hopkins, $1,324.20; Wm. Law, $1,301.90; Soby Balance, $1,058.52; Roberts & Co., $512.50; Call Board Seats, $1,250.00; Einstman & Co., $853.23; Cash Rye, $1,632.66; Graham Acct., $1,102.62.

12. That the open trades of the old firm of Robt. Lindblom & Co. at the time of the formation of the new firm, were assumed by the latter, and that the latter was liable for the losses incurred upon said trades after July 2, 1884.

13. Failure of master to charge to Lindblom & Van Kirk in proportion to their relative interests at the time of the formation of the firm certain losses on open trades incurred after formation of the new firm; and because he charges same to profit and loss account, in amount to $15,531.71.

14. For failure to find Lindblom, as manager of the firm, not negligent in not forbidding customers running large accounts on credits, without requiring security or stating their responsibility, being most of accounts mentioned in Exception 11.

15. For finding that the items Cash Rye $1,632.66, and

N. Y. Grain $3,719.98, were authorized transactions properly charged to profit and loss.

16, 17 and 18. For holding that the New York branch of the firm became severed from the firm after January 4, 1884, and that Miller and Williams formed a co-partnership under the name of N. G. Miller & Co., and that as such partners became liable for the losses on trades of customers doing business with the firm of Robt. Lindblom & Co., through N. G. Miller & Co., on and after January 4, 1884, to the extent of $47,621.55.

19. For holding W. S. Williams chargeable with the account of Scoville C. Williams to the amount of $9,772.73, and that said Williams guaranteed the same, and that credit for such account was not extended to Scoville C. Williams.

20. For finding that $20,000 paid under the direction of Lindblom to Poole, Kent & Co. is not properly chargeable to the individual account of Lindblom instead of Miller.

21. For finding Lindblom should not be charged with the commissions on 20,840,000 bushels of grain traded in through speculative accounts, and that said Lindblom was authorized to make such trades.

22. Because the master failed to show what and how much was actually contributed by Lindblom & Van Kirk to the capital of the company.

23. Because the master failed to find that the failure to realize on certain alleged assets on the balance sheet of July 6, 1883, produced a deficit in the capital of Lindblom & Van Kirk, on which they should be charged with interest during the period of the firm's existence.

24. Because the master finds that Williams should be charged with the loss of $6,000 accruing from the failure of the firm of Lindblom & Co. to accept the tender of grain for him from Rumsey Bros. & Co.

25. Because the master finds that there is due to Lindblom from Miller and Williams, jointly, the sum of $12,104.49, and to Van Kirk from Miller and Williams the sum of $4,180.99.

26.  Because the master refuses to credit profit and loss with the following items, to-wit:

Loss on open accounts........................$19,427.96
Bad accts. wrongfully chg'd to profit and loss... 19,186.36
One-eighth per cent comm. on 20,840,000 bushels
    of grain................................. 26,056.25
Int. on deficit in Lindblom & Van Kirk's cap-
    ital ..................................... 5,689.26
And that he refuses to charge profit and loss
    with S. C. Williams' account.............. 9,772.23
And N. G. Miller & Co.'s new account.......... 19,530.21
    27.  Because the master refuses to charge
    Lindblom three-fourths of losses on open
    accounts ................................. 14,570.97
Three-fourths of bad accounts................. 14,389.77
Cash to Poole, Kent & Co...................... 20,000.00
Uncollected commissions....................... 26,056.25
Three-fourths interest on deficit capital........ 4,266.95
And refuses to charge Van Kirk one-fourth of loss
    on open accounts and one-fourth of bad ac-
    counts, and one-fourth interest on said deficit,
    amounting to.............................. 11,075.89

28.  Because the master refuses to find that the method and contribution of capital of Lindblom and Van Kirk, and concealment of the condition of the accounts of the old firm, and the subsequent management of the business by Lindblom, and speculations by him with the capital of the firm, constituted a fraud on Williams, entitling him to return balance of his capital, with interest from time of contribution.

29.  Because the master finds Williams is indebted to said firm, and Lindblom entitled to credit.

30.  Because the master's report is not in accordance with the orders of reference or the pleadings and the issues raised thereby in said cause, and the evidence adduced thereunder.

Such objections might well be condensed into one, viz.: That the master came to wrong conclusions upon all questions, "and it is no good assignment of error, *quod in omnibus erratum est.*"    3 Bac. Abr. 368.

The principle involved is not confined to exceptions to reports of masters in chancery, stating accounts. As was said by Judge McAllister in C., R. I. & P. R. R. v. Moffit, 75 Ill. 524, "Many rules have become established whose sole policy was the convenience of courts." Chi. City Ry. v. Van Vleck, 40 Ill. App. 367; Harding v. Sandy, 43 Ill. App. 442; 2 Ency. Pl. & Pr., 960.

As said in Moffit v. Hanner, 154 Ill. 649, "The exceptions are the pleadings to the items of an account, and must be specific, and not general, as they can then be reviewed by the Appellate Court or Supreme Court."

To make exceptions specific, "the evidence which furnishes the ground of the exceptions should be required, by the party excepting, to be stated by the master; for, otherwise, the court will not wander at large into the evidence in order to ascertain whether, by possibility, the master was wrong in his conclusion or not." Donnell v. Columbian Ins. Co., 2 Sumner, 366.

The same rule is stated in Pennell v. Lamar Ins. Co., 73 Ill. 303 : " If either party is dissatisfied with the master's decision, on requesting him, he should certify the evidence touching such items as were excepted to and decided by him, to the court, where his decision can be reviewed."

In Huling v. Farwell, 33 Ill. App. 238, we applied the rule that exceptions should be specific, and on appeal to the Supreme Court, while that court held that a decree should not be reversed for defective exceptions, yet it agreed to the rule. Farwell v. Huling, 132 Ill. 112. Very many cases here have announced the rule. Friedman v. Schoengen, 59 Ill. App. 376; Wolcott v. Lake View Ass'n, Ibid. 415; Springer v. Kroeschell, Ibid. 434. Intelligently to pass upon all these exceptions would require weeks of labor; a study of all the evidence several times, in determining the application of the different parts of it to the several exceptions. We have no time, and the law does not require us, to perform that labor.

The decree is affirmed.