# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW-YORK.

———•●•———

## REED *vs.* LATSON and others.

To constitute a merger, the greater and less estate must meet and coincide in the same person. When that is the case, at law, the less estate is immediately annihilated. But in equity this rule is not inflexible. There it depends on the intention of the parties, and a variety of other circumstances, whether a merger shall take place, or not.

Where mortgaged premises are sold on execution, and the purchaser at the sale receives the sheriff's certificate, which he subsequently assigns to the mortgagee, and the latter assigns the same to another person, who receives the deed from the sheriff, the two estates do not meet in the mortgagee, so as to constitute a merger.

Persons who have purchased land expressly subject to a mortgage thereon, cannot be allowed to set up a merger, by reason of a sheriff's sale of the premises on execution and the assignment of the certificate to the mortgagee, in defense to a foreclosure suit.

Nor can such purchasers set up as a defense to a foreclosure suit, as a counterclaim by way of offset or recoupment, a fraud practiced upon them more than four years after the mortgages were given, and by a person other than the plaintiff, viz. the mortgagor; where there is nothing to connect the plaintiff with the fraud of the mortgagor.

THIS was an action to foreclose two mortgages. The complaint alleged that John W. Latson, to secure the payment of

Reed *v.* Latson.

$7980 with interest, to the plaintiff, on the 8th February, 1846, executed his bond, with a condition to pay that amount to the plaintiff as follows : $2000 on the 8th of February, 1847, $3000 on the 8th February, 1848, and the balance on the 8th February, 1849, with interest; and as collateral thereto, he executed to the plaintiff a mortgage on certain premises, therein . described, with the like condition, which mortgage contained the usual power of sale and was duly acknowledged and recorded. It was alleged that this mortgage was in part to secure the consideration money or purchase price of the mortgaged premises. On the 8th April, 1847, the plaintiff released a certain portion of the premises, from the lien of the mortgage.   It was further alleged that John W. Latson and wife, about the 12th April, 1847, gave a bond and mortgage to the Trust Fire Insurance Company, to secure the payment of the sum of $4000, within one year from date, with interest, upon the same premises mentioned in a deed thereof, bearing date 3d August, 1832, by John S. Schermerhorn to Smith, Fitch and Lozee.   The mortgage was duly acknowledged and recorded, and it contained the usual power of sale, &c.

On the 27th August, 1849, Foster, Johnson and Stratten were duly appointed receivers of the said Trust Fire Insurance Company, who as such transferred the said bond and mortgage to the plaintiff, who thus became and now is the legal owner thereof.   The plaintiff, by an instrument in writing bearing date 13th December, 1850, declared that the last mentioned mortgage was held by him as collateral security for the first mentioned mortgage, and that all his claim and demand was $8000 and interest from November, 1850.   It was alleged that Latson had failed to comply with the condition of the mortgages, and that the sum of $8000 and interest from the 28th November, 1850, was due to the plaintiff, and that no proceedings had been had for the recovery thereof.

The complaint stated that William Fowler and Calvin C. Billings had, or claimed to have some interest in or lien upon the said mortgaged premises, subsequently to the lien of the plaintiff's mortgages.   The plaintiff demanded judgment and that

the defendants and all persons claiming under them might be barred, &c. in the usual form, and that Latson might pay any deficiency, &c. The complaint was verified 6th May, 1852.

The defendants Fowler and Billings answered the complaint, and traversed every material allegation, by saying that they had no knowledge sufficient to form a belief as to the truth thereof. They then proceeded to another defense, thus: they alleged that prior to the 27th day of November, 1850, they were owners of twelve houses and lots on the south side of Twenty-second-street between the fifth and sixth avenue in the city of New-York, of great value, to wit, $156,000, subject to mortgages to the amount of $108,000, and being so owners, the said J. W. Latson negotiated with them to purchase said twelve houses, and it was finally agreed that the defendants Fowler and Billings should sell and convey to Latson the said twelve houses and lots subject to the mortgages thereon, and should take and receive in exchange and payment from Latson the land described in the complaint, subject to a mortgage debt of $8000, together with certain stock and utensils thereon; an assignment of a mortgage on the Pearl-street house, New-York, executed by John D. McGregor to said Latson, with McGregor's bond accompanying the same, which bond and mortgage purported to secure $10,000 payable on the 1st November, 1850, and also an assignment of a chattel mortgage executed as collateral to the last mentioned bond and mortgage by McGregor to Latson, upon the furniture and other personal property in and about the Pearl-street house, as by the agreement between F. and B. and said Latson, dated 26th July, 1850, would appear. In pursuance of this agreement, Latson, on the 28th November, 1850, conveyed to the defendants Fowler and Billings the premises, subject to the $8000 mortgage, having previously assigned to them the bond and mortgage and chattel mortgage executed by McGregor. And the defendants Fowler and Billings, by deed dated 9th December, 1850, conveyed the twelve houses and lots in Twenty-second-street, but at the request of Latson conveyed them to the plaintiff instead of Latson. The answer stated that at the time of the negotiation, Latson represented that the real

estate mentioned in the complaint, with the stock and utensils thereon, was worth $60,000. over and above incumbrances; that the McGregor bond and mortgage and chattel mortgage were good, valid and subsisting securities in said Latson's hands for the moneys secured thereby, and were worth $10,000, at which the defendants took them. That on the faith of these represen- tations the defendants conveyed the said houses and lots, which but for such representations they would not have done, and took in exchange the assignment of said mortgages and the convey- ance of the lands in the complaint mentioned. The answer stated that these representations were falsely and fraudulently made by said Latson, with intent to deceive and defraud the defendants Fowler and Billings; that the real estate in the com- plaint mentioned was not worth over $8000, beyond the incum- brances. That the mortgage on the Pearl-street house was subject to a prior mortgage on which there was due $75,000, and which said Latson knew was then in process of foreclosure; that the property covered by said mortgage, had to Latson's knowl- edge, depreciated in value, and was not worth the amount of the first mortgage; that the mortgage on the Pearl-street house furniture was fraudulent and void; that the property covered by it was, to the knowledge of Latson, at the time, claimed by Barnabas H. Ammett by paramount title to that of McGregor the mortgagor, and he had taken the property under process issued to the sheriff of New-York; that the title of McGregor to said real and personal property was a mere cover to the oper- ations of Latson; that prior to the assignment of the personal mortgage to the defendants, Latson had agreed to sell said per- sonal property to one Samuel Cameron, free and clear of all in- cumbrances; that in pursuance of such agreement McGregor, by a bill of sale dated March 25th, 1850, sold the same property covered by said mortgage to said Samuel Cameron, who by a like bill of sale, dated 27th April, 1850, sold the same to David and Alexander J. Cotheal; that said personal mortgage, though dated November 1st, 1849, was not filed till the 4th day of April, 1850, and the Cotheals claimed that the same was void as against Cameron and them, as purchasers from him. That

Reed v. Latson.

Latson, at the time of said conveyance by the defendants, was cognizant of the said facts and of the adverse claims in respect to the property.

It then alleged, on information and belief, that the plaintiff and not Latson was the owner of the said bond and mortgage and chattel mortgage executed by McGregor; that they were taken in the name of Latson instead of Reed the plaintiff, for the purpose of fraud, swindling and imposition; that notwithstanding the use of Latson's name in the sale by the defendants, of the houses in Twenty-second-steet, the plaintiff and not Latson was the party concerned; that Latson acted as the agent of the plaintiff; that Latson and the plaintiff were accomplices together to cheat and defraud the defendants. It also alleged on information and belief, that the plaintiff and not Latson was the real owner of the lands described in the complaint. That in 1848, the said lands were sold by the sheriff on execution and were purchased by one Dunscomb, who assigned the sheriff's certificate to the plaintiff, and the plaintiff assigned the same without consideration to his brother Roswell Reed, merely to keep alive said pretended mortgage, and the sheriff's deed was taken by said Roswell Reed, and the title held by him for and on account of the plaintiff until the 17th October, 1850, when he conveyed to Latson, without consideration, as the agent and accomplice of the plaintiff, to complete said negotiation with the defendants, by which he was to convey said lands to them.

The answer denied that the defendants had received any money on account of the McGregor mortgages to Latson; and alleged that the Pearl-street house had been sold on a foreclosure of a prior mortgage, and failed to bring enough to pay the same; that McGregor's bond was worthless; that Barnabas H. Ammett retains the property covered by the chattel mortgage, and the Cotheals had brought suits against him for the value thereof, which were still pending; that said chattel mortgage was, as the defendants were informed and believed, absolutely void as against the title of the Cotheals, and was intended as a fraud on the part of Latson. It then alleged that by means of these frauds and devices of the plaintiff to obtain the title to their

houses in Twenty-second-street, they had suffered loss to the amount of $20,000, for which, as a counterclaim against the plaintiff, they prayed judgment in their behalf with costs; that the mortgages mentioned in the complaint might be adjudged to have been equitably merged and extinguished by reason of the plaintiff's having become the purchaser, at the sheriff's sale, of the equity of redemption in the premises covered thereby; and that they might be adjudged to be no lien on said land. The answer was sworn to on the 26th June, 1852.

At a special term, in Albany, on the 27th July, 1852, the above answer, so far as it set up new matter, was ordered to be struck out as an irrelevant defense, with ten dollars costs; unless the defendants should within twenty days elect to consider the motion to strike out as a demurrer to the defense; in which case judgment was given for the plaintiff upon the demurrer, with costs. The defendant did not elect to treat the motion as a demurrer, but appealed to the general term, from the order of the special term.

*S. P. Nash*, for the defendants Fowler and Billings.

*J. Sutherland*, for the plaintiff.

*By the Court*, WILLARD, P. J. The position taken by the defendants' counsel, that the mortgages sought to be foreclosed have become inoperative by reason of merger, cannot be maintained. To constitute a merger, the greater and less estate must meet and coincide in the same person. In such case, it is admitted, that at law, the less estate is immediately annihilated. But this rule is not inflexible, in equity. In that court it depends on the intention of the parties, and a variety of other circumstances, whether a merger shall take place or not. (*See James* v. *Morey*, 2 *Cowen*, 246; 7 *Paige*, 50; 8 *Id*. 182, 186.) In the present case the two estates did not unite in the same person. Assuming the answer to be true, the sheriff's deed of the equity of redemption was not given to the plaintiff, the mortgagee. He held indeed the sheriff's certificate by assign-

ment, a short time, but transferred it to another, to whom the deed was given. Whether this transfer was with or without consideration is immaterial. The two estates never for a moment met in him, and consequently there was no merger.

Again; the sheriff's sale and conveyance which the defendants contend operated as a merger, took place *prior* to the time when the defendants, Fowler and Billings, purchased the land covered by the mortgage. The answer itself admits that they agreed to take a conveyance from Latson of the premises in question, subject to the $8000 mortgage, in part payment for their houses and lots in Twenty-second-street; and they admit that Latson gave them a deed of the said premises, in pursuance of that agreement. It does not rest in their mouths to set up a merger, after making a purchase expressly subject to the mortgages. (*See James* v. *Morey,* 2 *Cowen,* 246.)

The counter claim set up by way of offset or recoupment, against the mortgages, is equally untenable. There are no facts stated in the answer which show that the defendants have any claim against the plaintiff. A counter claim must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes. 1. A cause of action arising out of the contract or transaction, set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action. 2. In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action. (*Code of* 1852, § 150.) If the defendants have a claim against any person, it was against Latson. The plaintiff was no party to the agreement. It is not pretended that he made any representations, true or false. The only fact alleged is, that in fulfilling their agreement, the defendants, instead of conveying their houses in Twenty-second-street to Latson, as by the contract they were bound to do, conveyed them to the plaintiff, by the direction of Latson. That fact did not make the plaintiff a party to Latson's fraud.

Again; the counter claim set up had not the slightest connection with the mortgages sought to be foreclosed. They were

made, the one in 1846, and the other in 1847, more than three years before the defendants conveyed their houses in Twenty-second-street to the plaintiff, and of course a like time before the commission of the fraud of which the defendants complain. The consideration of the mortgages is not impeached. The transaction with respect to them is not shown to have led to the subsequent bargain between Latson and Fowler and Billings, or to have any connection with them. This case is entirely different from *Van Epps* v. *Harrison,* (5 *Hill,* 63.) The action there was upon the bond accompanying the mortgage given for the purchase price of certain lots, and the fraud set up was alleged to have been perpetrated by the obligee in relation to the same lots. It was all a part of one and the same transaction. But in the present case the defendants seek to repudiate an express agreement made by them to purchase land subject to the mortgages, on account of a fraud practised upon them, more than four years after the mortgages were given, and by a person other than the plaintiff. This cannot be done. The answer shows no cause of action against the plaintiff. If Latson cheated the defendants, it affords no reason why the plaintiff should not recover judgment of foreclosure on the mortgages set up in the complaint.

The plaintiff might have demurred to the answer. That was an appropriate remedy, and he would have been entitled to judgment. But leave might have been granted to the defendants to amend. The court gave the defendants their election of a judgment as upon a demurrer, but they declined it. They have no ground therefore to complain that it was stricken out. The 152d section of the code of 1851, empowers the court to strike out either *sham* or *irrelevant* answers. *Brown* v. *Jenison,* (3 *Sandf. S. C. R.* 732,) was decided under the code of 1849, when section 152 only applied to *sham* answers. The remedy for a frivolous defense was under section 247, to move for judgment thereon. But probably the court always had the power of striking out a frivolous pleading, as they clearly had a *sham* pleading. (*Steward* v. *Hotchkiss,* 2 *Cowen,* 634. *Brewster* v. *Hall,* 6 *Id.* 34. *Oakley* v. *Devoe,* 12 *Wend.* 196.

*Broome County Bank* v. *Lewis,* 18 *Id.* 565. *Lowry* v. *Hall,* 1 *Hill,* 663. *Heaton* v. *Bartlett,* 13 *Wend.* 672. *Melville* v. *Hazlet,* 18 *Id.* 680.) The foregoing cases show what the practice was before the code. The case of *Nichols* v. *Jones,* (6 *How.* 355,) before Barculo, J. and *Harlow* v. *Hamilton,* (*Id.* 475,) before Willard, J. show what the practice is under the code.

It is no objection to the motion that the answer was verified. In *Mier* v. *Cartledge,* (8 *Barb.* 75,) the general term in New-York held that a *sham* answer which was verified could not be stricken out on motion. Mr. Justice Edmonds concludes his review of the cases by saying, that when a pleading is verified as required by the code, a motion to strike it out as *false,* cannot be entertained. We are not called upon to question that opinion here, because the motion was not granted on the ground of the *falsity* of the answer, but its *frivolousness.* None of the reasoning of Judge Edmonds applies to this case. The *truth* of the matter stated was not in issue. The affidavit of verity under the code, had no tendency to make that *material* which was palpably *frivolous.*

The order of the special term is affirmed, with ten dollars costs.

[SCHENECTADY GENERAL TERM, January 3, 1853.  *Willard, Hand, Cady* and *C. L. Allen,* Justices.]