FORT DEARBORN LODGE No. 214, I. O. O. F.

*v.*

ALBERT KLEIN *et al.*

*Filed at Ottawa November 14, 1885.*

1. TRESPASS QUARE CLAUSUM FREGIT—*when the action will lie—and herein, of the right of the owner to make entry.* The action of trespass *quare clausum fregit* never lies except for an injury to the possession of the plaintiff.

2. Where the owner of land, having the right to the immediate possession, makes an entry thereon in a quiet and peaceable manner, or without actual force or violence, he is not liable in trespass to one who has neither the right of property nor a right to the possession. In such case the plea of *liberum tenementum* presents a complete answer to the action.

3. The first section of the Forcible Entry and Detainer act, "that no person shall make an entry into lands or tenements except in cases where entry is allowed by law, and in such cases he shall not enter by force, but in a peaceable manner," is a recognition of the common law remedy given the paramount owner entitled to possession, to redress himself without legal process, but limits his entry to a peaceable one. The word "force" is to be construed *actual* force.

4. SAME—*liberum tenementum—whether it is a proper plea, and of its nature and effect.* The plea of *liberum tenementum* is a proper plea in an action of trespass *quare clausum fregit,* and it is error to instruct the jury to disregard the same when pleaded.

5. The plea, as one of confession and avoidance, in legal effect admits such a possession in the plaintiff as would enable him to maintain the action against a wrongdoer, and asserts a freehold in the defendant, with a right to immediate possession as against the plaintiff.

12—115 ILL.

| 115 | 177 |
| 27a | 251 |
| 27a | 386 |
| 115 | 177 |
| 127 | 96 |
| 127 | 100 |
| 115 | 177 |
| 29a | 142 |
| 115 | 177 |
| 131 | 519 |
| 32a | 403 |
| 115 | 177 |
| 33a | 418 |
| 115 | 177 |
| 35a | 586 |
| 37a | 309 |
| 115 | 177 |
| 139 | 135 |
| 115 | 177 |
| 147 | 341 |
| 115 | 177 |
| 150 | 310 |
| 44a | 20 |
| 45a | 477 |
| 45a | 494 |
| 115 | 177 |
| 160 | 241 |
| 115 | 177 |
| 157 | 133 |
| 46a | 20 |
| 46a | 231 |
| 46a | 498 |
| 48a | 216 |
| 115 | 177 |
| 54a | 368 |
| 55a | 225 |
| 115 | 177 |
| 59a | 346 |
| 115 | 177 |
| 164 | 261 |
| 115 | 177 |
| 192 | 7 17 |
| 115 | 177 |
| 99a | 2 154 |
| 115 | 177 |
| 207 | 5 522 |
| 115 | 177 |
| 115a | 4 354 |

6. SAME—*replication to such a plea.* To a plea in an action of trespass *quare clausum fregit,* that the *locus in quo* was the soil and freehold of the defendant, and that he and his servants *peaceably* entered the same for the purpose of building a partition wall, etc., the plaintiff may reply that at the time of the alleged trespass he was in the lawful possession of the premises as a tenant of the defendant.

7. PRACTICE—*erroneous rulings upon the pleadings—power and duty of the trial court to correct them.* The court has the power, and it is its duty, at any time before trial, when becoming satisfied that an erroneous ruling has been made with respect to the sufficiency of a.pleading or other similar matter, to promptly set aside the order and correct the error.

8. Where the court, after overruling a demurrer to a plea and the filing of replication thereto, becomes satisfied that the plea was bad, as presenting no defence, it should withdraw the case, at least temporarily, from the jury, set aside the order overruling the demurrer, and enter one sustaining the demurrer. The defendant should then be permitted to stand by the plea, or plead over, as advised. This is much the same as awarding a repleader, and the fact that the order was made by another judge is a matter of no consequence.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. J. W. SHOWALTER, for the appellant:

At common law, under no circumstances could an action of trespass *quare clausum fregit* be maintained against one, who, having the right of possession, made entry upon his own land. 1 Hawkin's P. C. chap. 28, p. 495, *et seq.; King* v. *Wilson,* 8 T. R. 357; *Harvey* v. *Bridges,* 14 Mees. & W. 437; *Hyatt* v. *Wood,* 4 Johns. 180.

The plea of *liberum tenementum* is a good plea to an action of trespass *quare clausum fregit* in this State. *Railroad and Coal Co.* v. *Cobb,* 94 Ill. 56; *Stearns* v. *Sampson,* 59 Me. 568; *Reeder* v. *Purdy,* 41 Ill. 279; 3 Chitty's Pl. 1074; *Phillips* v. *Springfield,* 39 Ill. 84; *Meader* v. *Stone,* 7 Metc. 147; *Dearlove* v. *Herrington,* 70 Ill. 251; *McCormick* v. *Huse,* 66 id. 315; *Haskins* v. *Haskins,* 67 id. 450; *Brown* v. *Smith,* 83 id. 300.

The decision overruling the demurrer was *res judicata*, and the court had no rightful authority to direct the jury to disregard the issue on the plea. *American Express Co.* v. *Pinckney*, 29 Ill. 405; *Cresswell* v. *Peckham*, 6 Taunt. 630; *Edwards* v. *Blunt*, 1 Strange, 426.

A court of error may reverse for any error found in the record, no matter whether assigned or not, or whether the point was raised or not in the lower court. *Castledine* v. *Munday*, 4 B. & Ad. 90; *Bennett* v. *Butterworth*, 11 How. 676.

Mr. JOHN McGAFFEY, and Messrs. BARNUM, RUBENS & AMES, for the appellees:

It is the settled law of this State, as announced by repeated decisions of this court, that the owner in fee, though wrongfully kept out of his possession, can not be permitted to enter against the will of the occupant; that the common law right to enter and to use all necessary force to obtain possession from him who may wrongfully withhold it, has been taken away by our statute of forcible entry and detainer; that the peace and good order of society require that the owner shall not be permitted to enter against the will of the occupant, and hence the common law right to use all necessary force has been taken away; and that while a landlord may enter upon his own premises peaceably, either during the time or after the expiration of a tenancy, or while in the possession of a wrongdoer, for a lawful purpose, yet he has no right to make forcible entry, or if, after entering for a lawful purpose, he shall injure the occupant or his property, the owner will render himself liable to an action, and he can not justify under the plea of *liberum tenementum*. *Page et al.* v. *DePuy*, 40 Ill. 506; *Reeder* v. *Purdy*, 41 id. 279; *Farwell* v. *Warren*, 51 id. 467; *Haskins* v. *Haskins*, 67 id. 446; *Railroad Co.* v. *Cobb*, 94 id. 67; 68 id. 53; *McCormick* v. *Huse*, 66 id. 320; *Dearlove* v. *Herrington*, 70 id. 251.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

On the 31st of December, 1881, the appellees commenced an action of trespass *quare clausum fregit*, in the Superior Court of Cook county, against the appellant, and others acting as its servants, the declaration being in the usual form. The suit was subsequently dismissed as to all the defendants but the appellant. Issues were joined on pleas of "not guilty" and of "leave and license," but they are unimportant, so far as the questions to be discussed are concerned. The defendant also pleaded specially that the *locus in quo* was the soil and freehold of the defendant, and that it, together with its servants, *peaceably* entered the same for the purpose of building a partition wall, etc. A demurrer having been overruled to this plea, the plaintiffs replied, in legal effect, that at the time of the alleged trespass the plaintiffs were in the lawful possession of the premises as tenants of the defendant, upon which plea issue was joined, and the cause was tried before the court and a jury, resulting in a verdict and judgment in favor of the plaintiff, for $500, which, on appeal, was affirmed by the Appellate Court for the First District. The case is certified here from the Appellate Court, and the conclusion to be reached turns upon the correctness of the ruling of the trial court with respect to the plea last above mentioned, which in technical language is called a plea of *liberum tenementum*.

It appears from the record, the pleadings were settled by one judge and the cause was tried by another, and that they were not in accord as to the sufficiency of the plea. While the former held it good on demurrer, the latter regarded it as presenting no defence, and expressly instructed the jury to that effect. To so instruct was equivalent to striking the plea from the record, which necessarily carried with it the replication thereto and the issue formed thereon. This left before

the jury a vast mass of evidence relating to the renting of the premises by the plaintiffs, which was not relevant to any issue then before the jury. To have carried out the trial judge's view, the court should also have withdrawn the replication, and all evidence relating thereto, from the consideration of the jury; but this was not done. We do not think the course adopted was the proper practice. Nor do we agree with counsel for the appellant, that where a court has made an order either sustaining or overruling a demurrer to a pleading, such order passes beyond the control of the court. On the contrary, whatever may have been the rule on the subject in former times, when pleadings were *ore tenus*, we are of opinion that under the present liberal practice the court has the power, and that it is its duty at any time before trial, when it becomes satisfied that an erroneous ruling has been made with respect to the sufficiency of a pleading, or other similar matter, to promptly set aside the order and correct the error. So in the present case, when the trial judge became satisfied that the plea in question was bad, he should have withdrawn the case, at least temporarily, from the jury, set the order overruling the demurrer, aside, and entered one sustaining the demurrer. The defendant should then have been permitted to stand by the plea, or plead over, as he might be advised. The course indicated is much the same as in the case of awarding a repleader. The fact that the order was made by another judge is a matter of no consequence whatever. The power of the trial judge was precisely the same as if he had made the ruling himself. The ruling in either case would be the act of the court.

The real question, however, in the case is, did the court err in holding the plea of *liberum tenementum* bad, and in withdrawing it from the consideration of the jury. The question involves the doctrine of legal seizin or possession of corporeal hereditaments by one having or claiming an immediate freehold estate therein,—a doctrine which lies at the very

foundation of the English law of real property, and which is as old as the common law itself. One having such seizin is properly called tenant of the freehold, and many rights and duties, particularly in ancient times, attached to him as such. We can not stop to enumerate these rights and duties, which grew out of the feudal system, and which anciently devolved upon the tenant of the freehold; nor would it be profitable to do so, as they are exhaustively treated by Blackstone, Kent, and other standard authors. Suffice it to say, in general terms, that the evils and abuses that formerly found recognition in the law of real property as it existed in England, growing out of their feudal origin, have, in the main, long since been abolished in England, and as to this country they never had any existence. But on the other hand, there are many doctrines of the law of real property, including that of seizin, whose origin is referable to the same fruitful source, that are in full force at the present time. Seizin and ownership, as to corporeal hereditaments, in the common law sense of the term, mean, practically, the same thing,—hence the doctrine is well recognized that but one of two or more persons claiming under adverse titles can have seizin of the same land at the same time. However many claimants, there can be but one seizin. It is to be borne in mind, however, this seizin may be tortious or wrongful, as well as lawful. Nevertheless, so long as the seizin continues, whether it be the one or the other, the person having it, for all practical purposes, is, by the common law, regarded as owner, according to the title he claims, which can not be less than a life estate, and may be an estate in fee or fee tail, where the latter kind of estate has not been abolished, as it has in this State.

There is a material difference, however, between lawful and unlawful seizin, in respect to the manner of acquiring or losing the same, which will more fully appear further on. There is also a difference in respect to the essential elements which enter into these two kinds of seizin. Thus, actual

occupancy is essential to a tortious or unlawful seizin, but it is not to a lawful seizin. There is no such thing as a constructive illegal seizin or possession, yet the holder of the legal title to a freehold estate, where the premises are vacant and unoccupied, has a seizin *in law*, as contradistinguished from a seizin in fact. The holder of the paramount title, when occupying the premises, is seized both in law and fact, but one not having such title can only be seized in fact. We desire to emphasize the statement that mere occupancy does not constitute seizin, in the legal sense of that term, even in the case of a tortious or unlawful seizin. One may be in the occupancy of land as a mere squatter, without any pretence of claim, when, in contemplation of law, even the possession is in another. The term "possession," though sometimes used in the sense of seizin, does not fully express the technical meaning of that term. Seizin *in fact* includes possession, yet it implies something more. Even the latter term is ambiguous, and much has been said and written, with, perhaps, not entire success, in attempts to define or explain its true signification, as applicable to the law of real property. It will, however, be sufficiently accurate for the purposes of the present discussion, to define possession, in the connection indicated, to be that position or relation which one occupies with respect to a particular piece of land which gives to him its use and control, and excludes all others from a like use or control. If one having exclusive possession in the sense stated, claims to have a freehold interest in the land, he will, in law, be deemed to be seized of the same according to the title or estate claimed, although the paramount title may be in another.

Seizin, then, in a legal sense, means possession with the intention of asserting a claim to a freehold estate in the premises added. By the English common law, the ownership of one thus seized of corporeal hereditaments was held co-extensive with his seizin, only. Whatever defeated his seizin

operated as a discontinuance of his estate.   If, therefore, a stranger having no title whatever entered upon the lawful owner, and expelled him from his own land, with the intention of asserting dominion and proprietorship over it himself, such action on his part was, in technical language, a disseizin of the owner, the effect of which was not only to discontinue the estate of the latter, but also to confer on the wrongdoer a defeasible estate in fee simple, which, if not determined by suit or entry within the Statute of Limitations, would ripen into an absolute inheritance.   The owner thus dispossessed might maintain an action of trespass *quare clausum fregit* for the original trespass, but for the subsequent tortious acts of the wrongdoer in exercising dominion over the premises, trespass would not lie, for the reason the former possession had ceased with his expulsion, and, consequently, there could be no injury to his possession, for which, alone, trespass lies.

To the student, or even the practitioner or jurist, it is a pleasing task to trace the numerous and important legal results which, by the common law, flow from a case of disseizin, and to note the numerous channels into which they branch out, and the consistency and wonderful harmony that are everywhere to be observed in them.   But we can not stop to consider them here, except so far as may be necessary to a presentation of our views upon the question under consideration.   In the case suggested, the owner, on being ousted or disseized, in addition to his right to maintain trespass for the original injury, still retained the right of property and a right to immediate possession.   But these rights, as already seen, were practically fruitless so long as the seizin remained in another, for, as the land could not be conveyed except by a transfer of the seizin,—a thing which the evicted owner no longer had,—it followed he was unable to sell or otherwise dispose of it until he regained the seizin.   To accomplish this object he had a choice of remedies.   He might bring an

appropriate action to recover the possession of the premises, or he might, without legal process, re-enter upon them, which would have the same effect as if restored to the possession by a suit at law,—and this entry without process, prior to 8 H. 6, Cap. 9, need not, so far as the civil rights of the parties were concerned, have been without force, for, whether the entry was peaceable or forcible, the effect in either case was to restore the owner to his lawful possession and seizin, and such restoration of his rights related back to the time of his disseizin, and thereby enabled him to maintain an action for the recovery of the intermediate damages or *mesne* profits during the time he was wrongfully kept out of possession.

But the act in question, which was passed for the suppression of forcible entries and forcible detainers, gave the party aggrieved a remedy by indictment, and also "by assize, or novel disseizin, or action of trespass," to recover treble damages. This act had been preceded by 5 R. 2, Cap. 8, and 15 R. 2, Cap. 2, relating to the same subject. The first provides : "That none, from thenceforth, shall make any entry into any lands and tenements but in cases *where entry is given by law*, and in such cases not with strong hand nor with multitude of people, but only *in a peaceable and easy manner;* and if any man, from henceforth, shall do to the contrary, and thereof be duly convicted, he shall be punished by imprisonment of his body, and thereof ransomed at the king's will." This act, it will be perceived, does not give any civil remedy, nor does it extend to forcible detainers, and, as the very terms in which it is conceived imply, it has no application to cases where the entry is made "in a peaceable and easy manner," though if made *"with a strong hand,"* or *"with multitude of people,"* it is an indictable offence, notwithstanding it may be in a case "where entry is given by law." The second act last above mentioned was extended to forcible detainers where the entry had been forcible, but not otherwise. It also contained a number of other provisions, the object of which was to give

effect to the statute, not contained in the original act.  Most of the forcible entry and detainer laws of this country, including our own, are substantially modeled after these acts, particularly the first.

There is nothing in the construction given by the English courts to these acts that warrants the conclusion that they were intended to abrogate or in any respect qualify the general principles that had hitherto governed the action of trespass *quare clausum fregit*, but the very contrary clearly appears from the decisions of those courts.  To maintain an indictment founded upon these statutes, it was necessary to allege and prove the possession or seizin of the prosecutor, and a forcible entry or detainer, or both, as the case might be.  The word *forcible*, as used in the statute, was held to mean *actual force*, as contradistinguished from that force which is implied from an unlawful entry, merely.  By actual force was meant such as breaking open doors, or other like violent acts.  So where an entry was effected by means of threats or intimidation of any kind, such as being attended by an unusual number of persons, or by making a display of dangerous weapons, it would be deemed a forcible entry, within the meaning of these statutes.  If the entry, on the other hand, was made by one having paramount title, and a right to immediate possession, in a peaceable and orderly manner, followed by no violence or intimidation, for the purpose of holding possession, no offence was committed under the statute.  Moreover, the effect of such entry was, as we have already seen, to immediately transfer the seizin and possession of the premises to the rightful owner, and, consequently, to deprive the occupant of whatever rights he may theretofore have had in respect to them, and upon his refusal to vacate and surrender the same upon request, the occupant himself would become a trespasser.

Upon what principle, then, could one thus circumstanced maintain an action of trespass against the paramount owner, ·

for such an entry? If the very act complained of, which was violative of no law, deprived the plaintiff of possession, how can it be said such act was an injury to his possession? It is clear when the act was consummated he had no possession. If, in the case suggested, there was no injury to the possession, as there clearly could not have been, it conclusively follows that trespass would not lie in such a case, since that action never lies except for an injury to the possession. It is partly upon this very theory of the law that the plea of *liberum tenementum* has uniformly in England, and almost by an unbroken current of authority in this country, been held a good plea to an action of trespass to realty. The plea has sometimes been criticized for being anomalous and illogical, in this, that the defendant, though a freeholder, might nevertheless be guilty of a trespass,—as, where a landlord wrongfully enters upon his tenant. But in such case that is proper matter to be set up in a replication,—the very thing which was done in this case. As a plea of confession and avoidance it has been construed to admit "such a possession in the plaintiff as would enable him to maintain the action against a wrongdoer, and to assert a freehold in the defendant, with a right to immediate possession as against the plaintiff." (*Ryan* v. *Clark*, 14 Q. B. 71.) And this, we think, is the legal effect of the plea.

Is there not a manifest inconsistency in conceding one to be the paramount owner of a piece of land, with a right to the immediate possession thereof, and yet maintain that if he, in a quiet and peaceable manner, enters upon the land thus owned by him, he may, by doing so, become liable in trespass to one who has neither a right of property therein nor a right to the possession? If one can recover in such case, his recovery will be on account of a thing (the possession) to which he had no right, and against the person who had the right to that very thing. The case suggested is not the case of one doing a lawful act in an illegal manner. A

tort or even a crime may well be committed by doing a legal act in an unlawful manner, and no case illustrates the principle better than that of the owner of land having a right to enter, who takes possession in a forcible and violent manner. But that is not the case suggested. By the common law there is no pretence for the claim that *liberum tenementum* is not a good plea to an action of trespass to real property. Indeed, this is universally admitted. But its sufficiency has been questioned by a few courts on the alleged ground that it is inconsistent with the forcible entry and detainer laws, which have already been partially considered, particularly as they formerly existed in England. So far as England is concerned, with the exception of the case of *Newton* v. *Harland,* 1 Man. & Gr. 644, (39 E. C. L. 581,) there is no foundation for the claim; and that case is overruled by later cases. Nor does the claim find but little more support from the general current of authority in this country than it does in England. It is believed that whatever contrariety of opinion exists on the subject, has arisen partly, if not mainly, from confounding the two senses in which the term "force" or "forcible" is used in the law. In Bacon's Abridgment, the author, after having explained the word "trespass" as signifying "*going* beyond what is right," and noticed the fact that some trespasses are committed without force, and that the remedy for such injuries is an action of *trespass on the case,* proceeds: "Other trespasses are accompanied with force, either actual or implied. If a trespass accompanied with actual force have been injurious to the public, the proper method of proceeding against the wrongdoer is by indictment or information. If a trespass accompanied with actual force have only been injurious to one or a few persons, the wrongdoer may, in some cases, be proceeded against by indictment, for although the injury was done only to one or a few persons, *yet as every trespass accompanied with actual force amounts to a breach of the peace,* it is an offence against the public. \* \* \* If a trespass not

accompanied with actual force have only been injurious to one or a few persons, the only method of proceeding against the wrongdoer,—this not being a public offence,—is by an action of trespass." Title "Trespass," vol. 6, page 554.

The distinction between actual and implied force is here clearly drawn, and the English and American courts generally, in giving effect to the law governing actions of trespass to real property, as well as to the forcible entry and detainer laws, have consistently kept this distinction in view. While they hold the owner of land criminally liable for an entry thereon *with actual force*, without regard to whether he has a right of entry or not, and in some cases, where the occupant has been expelled from the premises, will, as part of the punishment, compel the owner to restore to him the possession, and thus place the parties *in statu quo*, yet such forcible entry by one having a present right of entry would not, at common law, sustain an action of trespass at the suit of the occupant wrongfully withholding the possession from the rightful owner. A plea of *liberum tenementum*, in such case, afforded a complete answer to the action. Thus, in *Roberts* v. *Taylor*, 1 Man., Gr. & S. 126, CRESSWELL, J., said : "In trespass *quare clausum fregit* the possession of the plaintiff is the foundation of the action ; and the defendant is considered sufficiently to deny the plaintiff's right of possession by pleading *liberum tenementum* in himself. * * * By this anomalous plea the plaintiff is put to shew how he has a possession in himself consistent with the freehold being in another, unless he chooses to traverse the title set up in the plea." Cases to the same effect, both in this country and England, might be cited almost indefinitely, if necessary, but it is not.

The sufficiency of such a plea was questioned by this court for the first time in the cases of *Page et al.* v. *De Puy*, 40 Ill. 506, and *Reeder et al.* v. *Purdy et ux.* 41 id. 282, both of which were decided at the April term, 1866. The view then taken in those cases, which is adverse to the sufficiency of such a

plea, was based mainly upon *Dustan* v. *Cowdry*, 23 Vt. 635, in which a very elaborate opinion was delivered by Justice RED-FIELD. After a very careful reconsideration of the opinion in that case, we are satisfied that undue importance was given to some of the positions assumed in it. That case, as well as the *Page* and *Reeder cases*, which were mainly controlled by it, was altogether unlike the one in hand. · In the present case the plea expressly avers that the entry was peaceable, and, moreover, the proofs show that such was the fact. There was such force in the *Page* and *Reeder cases* as to clearly bring them within the forcible entry and detainer laws, even as construed in England. This is also true of the case of *Dustan* v. *Cowdry, supra,* upon which our own cases are based. Where the record shows such a state of case, there would be some apparent reason, at least, in holding that such a plea was not sustained by the proofs ; but here the truth of the plea is admitted by the replication. In *Dustan* v. *Cowdry, supra,* the entire reasoning of the court is based upon the tortious character of the entry, and the force and violence used afterwards. The present case is not embarrassed by any consideration of that kind, for, as just remarked, the peaceable entry of the defendant is admitted by the pleadings. But not only so, we think the proofs conclusively show the same fact. The case is simply this : The defendant, having a clear right to enter, did so in a peaceable manner, as is alleged in the plea, and proceeded to erect the party wall. To do this it was necessary to move the storehouse, in which the plaintiffs were doing business, a few inches, which was done in a careful manner, putting the plaintiffs to as little inconvenience as possible. While this was being done the plaintiffs were conducting their business in the house just as before. There was no attempt by the defendant to interfere with the contents of the house or the business of the plaintiffs.

But let us see what there is in our Forcible Entry and De-tainer act that affects the sufficiency of such a plea. The

first section provides: "That no person shall make an entry into lands or tenements except in cases where entry is allowed by law, and in such cases he shall not enter with force, but in a peaceable manner." The second section gives a civil action to recover the possession in certain specified cases. So far as the civil feature of this act is concerned, it has always been regarded as a substitute for the old common law writ of entry, which decides nothing but the right of possession. With respect to the prohibitory feature contained in the first section, it is, in legal effect, the same as that contained in 5 R. 2, Cap. 8, above cited. A person not having a right to enter is forbidden to do so. One having such right may enter, provided he do so without force and in a peaceable manner. The word "force," as here used, means *actual* force, as contradistinguished from implied force. Any entry requires force, in the literal sense of the term, but that, of course, could not have been meant, for it would involve an absurdity. Nor does it mean that force which the law implies where a peaceable entry is made by one having no right to enter, for the act absolutely prohibits a person of that kind from making an entry at all. The conclusion, therefore, is irresistible that the force which the statute inhibits is actual force.

It is clear, then, from the very words of the statute, that the paramount owner of a tract of land, having a present right of immediate possession, may enter the same in a peaceable manner, though occupied by another, and he will not, by reason of such entry, become a trespasser. The word "entry," occurring in the statute, is used in its appropriate legal sense, as signifying that remedy which the common law gives to the paramount owner of real property to redress, without legal process, the injury which he sustains when wrongfully deprived of the possession thereof by one having no right thereto. To say that the plea in question is bad, is to assert that this right no longer exists. This surely can

not be the law. Outside of the fact that the existence of such right finds recognition and support in all the books ever written on the law of real property, as it exists here and in England, it is expressly recognized in the statute. Turning to chapter 83 of the Revised Statutes, entitled "Limitations," we find in the first section the following language: "That no person shall commence an action for the recovery of lands, *nor make any entry thereon,* unless within twenty years after the right to bring such action *or make such entry* first accrued," etc. Again, in the third section: "The right *to make an entry* or bring an action to recover land shall be deemed to have first accrued at the times respectively hereinafter mentioned, that is to say: First, when any person is disseized, his *right of entry* or of action shall be deemed to have accrued at the time of such disseizin," etc. It is to be specially noted that the right to make an entry and to bring an action are put upon the same footing, and that they are both given for the same purpose, namely, "*to recover land.*" It would be simply absurd to say that all this means is, that the owner may go on his own land and stop the running of the statute when invited or permitted to do so by the occupant who is wrongfully and willfully withholding the possession from him. A peaceable entry in such case as completely defeats the possession and seizin of the occupant as if put in possession by a suit at law. In either case the possession of the occupant is determined, and if he does not at once vacate the premises, the owner, being now in possession, may himself maintain an action of trespass against the tortious occupant, but the owner is not authorized to assault him or forcibly eject him. If, upon making such entry, he is assaulted and expelled by the occupant, he can prosecute the latter, both criminally and civilly, for the assault, and have him arrested upon a capias, in an action of trespass *quare clausum fregit,* for the trespass to the land. All this is but the necessary legal consequences which flow from the remedy by entry.

This view of the subject entirely harmonizes the law relating to "trespass," "limitations" and "forcible entry and detainer." Any other view leaves the whole subject in doubt and confusion. A good illustration is afforded of this by what is said in the *Reeder case,* where the old doctrine of the court was first departed from. That case was reversed because the court refused to instruct the jury the plaintiff could not recover for any damages to the real estate. The land in that case, as in this, belonged to the defendant. In disposing of the case on that point, it is said in the opinion: "But a person having no title to the premises clearly can not recover damages for any injury done to them by him who has title. It would be a startling doctrine to hold that the wrongful occupier of land could make the owner thereof respond to him in damages for timber that the owner might cut on the premises," citing *Hoots* v. *Graham,* 23 Ill. 82. It would seem, upon more mature consideration, that the wrongful occupier's right to the possession in that case, for which it was thought he ought to recover, was not a whit better than his title to the land. This being so, the same logic which denied a recovery for the one certainly ought for the other.

All the cases in this court which seem to recognize the view taken in the *Page* and *Reeder cases* are, of course, founded upon them. There is no case, however, decided by this court to which our attention has been called or which we have been able to find ourselves, where the sufficiency of a plea of *liberum tenementum* has been raised by demurrer. The present case, it is believed, presents the question more directly than any one that has occurred in this court. Subsequent to the *Page* and *Reeder cases* the following ones have occurred in this court, in which the question under consideration has been discussed or adverted to with more or less directness: *Farwell* v. *Warren,* 51 Ill. 467; *Haskins* v. *Haskins,* 67 id. 446; *Illinois and St. Louis Railroad Co.* v. *Cobb,* 94 id. 55, and 68 id. 53. *Farwell* v. *Warren* simply holds that a landlord has no right

13—115 ILL.

to make a *forcible* entry on his tenant holding over. This, of course, is the correct doctrine. The clear implication is, that he would have the right to make a peaceable entry. *Haskins* v. *Haskins* was an aggravated case of forcible entry. The case was tried under a plea of not guilty, with a stipulation that any legal evidence might be given under it tending to sustain or defeat the action. The opinion was delivered by Justice McALLISTER, and all that is said in it pertinent to the present inquiry is found on page 450. It is there said: · "There was no attempt to justify under what would support a plea of *liberum tenementum.* Under the decisions in this State such a defence could not be sustained in justification of a *forcible* eviction of one in the actual, peaceable possession of real estate," citing *Reeder* v. *Purdy et ux.*, and *Farwell* v. *Warren, supra.* While no question seems to have been made about it, the court clearly recognizes the right to defend under a plea of *liberum tenementum,* where the facts will warrant such a defence. *Illinois and St. Louis Railroad Co.* v. *Cobb,* 68 Ill. 53, was another aggravated case of forcible entry, and throws no light on the present case. In the case reported in 94 Ill. 67, between the same parties, the doctrine is announced "that if a party in possession of real estate is wrongfully ousted by another, the latter can not by such wrongful act acquire a possession which it will be a trespass in the former to disturb, provided the re-entry of the person so wrongfully ousted involves no breach of the peace." What is here said is certainly true, and is in perfect accord with what we have said on the subject in the course of this opinion, but it is not to be reconciled with all that is said in the *Reeder case.* The only objection to the language above cited is, that it unnecessarily limits, by implication, the principle that the owner whose land is wrongfully withheld by another may peaceably enter upon the occupant, to cases where there has been a forcible eviction of the rightful owner. The principle, as we have already shown, applies to all cases where the owner

with a present right of entry is unlawfully kept out of possession. So far as it affects the right of entry by the true owner, so long as that right exists as a remedy, how the wrongful occupant obtained possession is a matter of no consequence. The only limitation upon the right in such case is that it must be peaceable.

The late case of *Piper* v. *Connelly et al.* 108 Ill. 646, was an action of trespass *quare clausum fregit*, to which the plea of *liberum tenementum* was interposed, which was traversed by a replication, and upon the issue thus formed it was held that a freehold was involved. Now, if as matter of law such a plea, when traversed, presents a wholly immaterial issue, the ruling in that case was clearly erroneous, for, in a legal sense, an immaterial issue can involve nothing. We have no reason, however, to question the correctness of that decision.

Upon a careful consideration of the whole case, we are of opinion that the plea in question was a good plea, and that the trial court consequently erred in instructing the jury to disregard it.

The judgments of the lower courts are reversed, and the cause is remanded to the Superior Court for further proceedings in conformity with this opinion.

*Judgment reversed.*

Mr. JUSTICE CRAIG: I am not prepared to indorse the reasoning in this opinion.