Argued 9 June, decided 11 July, 1904.

**FLANAGAN ESTATE *v.* GREAT CENT. LAND CO.**

[77 Pac. 485.]

CONSTRUCTION OF CONTRACT BETWEEN VENDOR AND PURCHASER.

1. A contract of sale having provided that the vendee should pay a certain part of the purchase price on the day the contract was signed, and should within ten days thereafter deposit a further sum to the credit of the vendors, and should "within one year thereafter" make another payment, the word "thereafter" refers to the time of executing the contract, and not to the expiration of the ten days.

WHEN ESCROW BECOMES OPERATIVE.

2. A deed deposited in escrow does not become operative to convey the title until the performance of the conditions or happening of the event on which it was intended to be delivered to the grantee designated, where there is no incapacity on the part of the grantors.

CONVEYANCE NOT CONSTITUTING A BREACH OF CONTRACT.

3. Plaintiff's vendors, as sole heirs to certain real property, entered into a written contract for the sale thereof to defendant, the consideration to be paid in several instalments at times provided in the contract. The contract provided that, when a certain sum had been paid, the vendors would execute a deed to be delivered to a trustee in escrow until the whole amount should be paid, which was done, but subsequently, and prior to another payment on the purchase price becoming due, the vendors formed a corporation and conveyed their interests to it, reciting however that the conveyan e was made subject to the rights of the grantee in the escrow deed. *Held*, that such conveyance was not a breach of the contract to convey, since it did not carry even enough of a title to require a suit to declare the corporation a trustee, the grantee evidently taking in subordination to the rights of the vendee.

RIGHT OF EQUITY TO DECREE STRICT FORECLOSURE.

4. A suit to obtain a strict foreclosure of a contract to convey land is inherently an admission of a subsisting right in the vendee and is not a claim of forfeiture, so that equity has jurisdiction.

STRICT FORECLOSURE NOT AFFECTED BY STATUTE.

5. Section 423, B. & C. Comp., providing for the foreclosure of liens and the sale of the property subject thereto, applies only to security debts, and does not affect the right to decree strict foreclosure of the rights of a vendee in a contract to convey land.

EQUITABLE RIGHTS UNDER CONTRACT TO CONVEY LAND.

6. The execution of a contract to convey land creates between the parties certain equitable and reciprocal rights as to the title and the payment of the purchase price that can be adjusted only in equity.

ENFORCING STRICT FORECLOSURE.

7. The remedy of strict foreclosure is a harsh one and will be enforced only in the sound discretion of the court, depending upon the varying conditions presented.

STRICT FORECLOSURE — REASONABLE TIME FOR PAYMENT.

8. Parties seeking strict foreclosure must have done equity as a condition of asking it, and must therefore allow a reasonable time to make any delinquent payments.

WHAT IS A REASONABLE TIME.

9. What will be a reasonable time within which defendant, in a strict foreclosure proceeding, shall make payments of the unpaid portion of the purchase price under a contract for the sale of land, rests mainly in the sound discretion of the court, time being allowed in proportion to the size of the debt.

EXAMPLE OF RIGHT TO STRICT FORECLOSURE.

10. Where land was sold under a contract expressly showing the parties to have intended that the agreement should cease to be obligatory on the vendors when the vendee made default in payment of the purchase price, and it appeared that of the stipulated consideration of $50,000, $13,250 had been paid when a default occurred, leaving a balance due, after deducting interest, amounting to $41,160, a strict foreclosure is not inequitable, though under such circumstances the time for making the final payment should be extended six months.

IDEM.

11. A decree of strict foreclosure of a vendor's lien under a contract for the sale of land requiring the vendee to pay the balance due on the purchase price at a date when part of the consideration had not yet become due, or suffer foreclosure should be modified by a reasonable enlargement of the time for payment.

From Coos: JAMES W. HAMILTON, Judge.

Suit by the Flanagan Estate, a corporation, against the Great Central Land Company and others. On July 25, 1902, Florence Sheridan and others, being the sole heirs at law of Patrick Flanagan, deceased, gave to one H. Sengstacken the following agreement in writing:

"For Value each for him or herself agree that they will convey to H. Sengstacken all of the interest which I have in and to the real property owned by my father, P. Flanagan, at the time of his death on what is known as Pony Slough and known as the Pony Slough Tract and including the land known as Centerville and the tide-land abutting owned by said estate and the whole including about six hundred acres; *provided,* that the said Sengstacken shall pay to us this day the sum of One Thousand ($1,000.00)

Dollars, and shall within ten (10) days thereafter deposit 25 % of ($49,000) Forty-nine Thousand Dollars, in the Flanagan & Bennett Bank to our credit and subject to our order, and shall within one year thereafter deposit in said bank fifty per cent of said Forty-nine Thousand ($49,000.00) Dollars with interest thereon at the rate of 6 % per annum, and shall within two years from this date also pay the remaining 25 per cent of said forty-nine thousand ($49,000.00) dollars with interest thereon at the rate aforesaid.

Upon the first 25 per cent of the $49,000.00 being deposited as aforesaid each for himself or herself agree to make, execute, acknowledge and deliver to Flanagan & Bennett Bank a deed of all of his or her interest to the real property already referred to in which deed Henry Sengstacken or to whom he assigns this contract on the back hereof shall be the grantee, and said bank shall hold the deed in escrow until the purchase price and interest aforesaid shall have been fully paid, or until default be made in any payment, and all payments, except the one thousand ($1,000.00) dollars shall be made to said bank for the grantors aforesaid, the One Thousand (1,000.00) Dollars payment to be made to E. G. Flanagan for the grantors aforesaid.

If any default be made in any payment the Bank shall immediately return all deeds to the grantors, it being understood by the bank that time is of the very essence of the contract.

All conveyances shall contain covenants of warranty.

In case of default in any payment all previous payments are hereby declared forfeited to the grantors aforesaid.

The grantors also agree that his or her wife or husband shall each for him or herself join in the conveyance aforesaid.

The purchase price is Fifty Thousand ($50,000.00) Dollars, and the one thousand dollars aforesaid shall form a part of the purchase price after the first 25 % payment is made, but prior to that time, it shall be considered as a consideration for the option only.

Time is especially and peculiarly made the essence of

45 OR.——22

this contract and no verbal extension of time shall in any way be considered or affect this contract in any ways, and it is expected and understood that in case of any default of any payment all previous payments shall be forfeited to and retained by the grantors, and in such event they intend to convey the land forthwith to another, and they shall not be required to bring any suit to declare the forfeiture."

Sengstacken paid the $1,000 on the day of the execution of the agreement. On August 2, 1902, he assigned and set over to the defendant, the Great Central Land Company, a corporation, all his interest in the agreement, which company has since continued to be the owner and holder thereof. Later, the company paid to the Flanagan & Bennett Bank, to the credit and subject to the order of the vendors in the agreement, 25 per cent of the remaining $49,000, being $12,250, whereupon, on August 20, 1902, the vendors executed, in accordance with the terms of their undertaking, a deed to the land company for the premises designated, and delivered the same to the Flanagan & Bennett Bank, to be delivered to said company when the stipulated payments of that which remained due of the purchase price were made. The plaintiff, the Flanagan Estate, was subsequently duly incorporated and organized by the vendors, who became and were the owners of the entire stock thereof, and on September 30th they conveyed the premises in question to the corporation, but subject to the contract of sale or agreement above set forth, and the conveyance to the Great Central Land Company, evidenced by the deed deposited in escrow with the Flanagan & Bennett Bank, and transferred and set over unto it all their right, title, and interest in and to the contract. The land company having failed to make payment of the additional 50 per cent of the $49,000 on or prior to the 25th day of July, 1903, the plaintiff, at 12 o'clock P. M. of that day, by notice to the land company, declared the con-

tract forfeited, and demanded of the Flanagan & Bennett
Bank a return of the deed held by it in escrow, the de-
mand being at once complied with.  This suit was insti-
tuted to obtain a strict foreclosure of the contract of sale
or agreement.  Two defenses were interposed: (1) That
defendant, the Great Central Land Company, was entitled
until August 4, 1903, to make the second payment, but
was precluded therefrom by plaintiff's previous declara-
tion of forfeiture and withdrawal of the escrow, contrary
to the stipulations of the contract; and (2) that the ven-
dors have since the execution of the contract conveyed all
their interest in the premises to the plaintiff, which com-
pany has failed and neglected to execute and deposit with
the Flanagan & Bennett Bank a deed conveying the same
to the land company.  The trial court decreed a strict
foreclosure, and the defendant, the Great Central Land
Company, appeals.                           MODIFIED.

For appellant there was a brief over the name of *Mc-
Knight & Seabrook,* with an oral argument by *Mr. Ephraim
Baynard Seabrook.*

For respondent there was a brief and an oral argument
by *Mr. Joseph W. Bennett.*

MR. JUSTICE WOLVERTON, after stating the facts in the
foregoing terms, delivered the opinion of the court.

1. The first contention in logical order to be noticed is
that the forfeiture was prematurely declared, it being in-
sisted by counsel for the defendant land company that
the third payment of 50 per cent of the $49,000 remain-
ing of the purchase price after the payment of the $1,000
was not then due and payable.  The position depends upon
the proper interpretation of the contract, the plaintiff con-
tending that the payment in question fell due July 25,
1903.  The agreement or contract, as will be noticed, pro-
vides that Sengstacken shall pay on the day which it bears

date the sum of $1,000, "and shall within ten (10) days thereafter deposit 25 per cent of ($49,000.00) Forty-nine Thousand Dollars, in the Flanagan & Bennett Bank to our credit and subject to our order, and shall within one year thereafter deposit in said bank fifty per cent of said Forty-nine Thousand ($49,000.00) Dollars with interest thereon at the rate of 6 per cent per annum." The inquiry centers about the employment of the word "thereafter," where found the second time in the excerpt. Does it bear relation to the date of the contract and that of the payment of the $1,000, or to the date of the deposit of the 25 per cent of the balance of the purchase price designated ? By pursuing the contract further, it will be found that the stipulation touching the last payment is that it shall be made two years after its date, so that all payments save this one are unmistakably fixed with reference to the date of the execution of the contract, and it is highly improbable that the payment in question should have been fixed with reference to some other date. Indeed, a critical reading of the conditions does not seem to us to lead to such a result, and we are firmly of the opinion that the contention is without merit.

2. It is next insisted that the deed by the Flanagan heirs, the vendors in the contract, to plaintiff carried the title of the premises to it, so as to defeat the purposes of the escrow, which is tantamount to, or is in itself, a breach of the contract on their part, and for that reason plaintiff cannot insist upon the remedy sought, the plaintiff not having placed in escrow a deed executed by it to the land company to be delivered upon like conditions as the former. The rule seems to be well established that a deed deposited in escrow does not become operative to convey the title until the performance of the conditions or happening of the event upon which it was intended to be delivered to the grantee designated, except in certain cases

arising through incapacity of the grantors, where by fiction of law it is allowed to take effect from the first delivery: 1 Devlin, Deeds (2 ed.), § 328; *Prutsman* v. *Baker*, 30 Wis. 644 (11 Am. Rep. 592); *Taft* v. *Taft*, 59 Mich. 185 (26 N. W. 426, 60 Am. Rep. 291); *Andrews* v. *Farnham*, 29 Minn. 246 (13 N. W. 161); *Cannon* v. *Handley*, 72 Cal. 133 (13 Pac. 315).

3. An inspection of the provisions of the deed to the Flanagan Estate will disclose, however, that it was not the purpose of the Flanagan heirs thereby to supersede the escrow, or to defeat the title that was intended to be conveyed by the latter instrument at the happening of the events upon which it was to become operative as a conveyance. By express condition the deed was made subject to the contract, and to the conveyance to the land company evidenced by the escrow, which we are impressed was effective to subordinate any title that may have passed thereby to the title that would have been acquired through the escrow if the conditions had come to pass upon which it was so placed. The fact that the plaintiff knew of the escrow, and of the terms and conditions upon which it was to become operative, would not alone have been effective to subordinate its title to that which would have ripened by the escrow taking effect as a deed, but it would be held, upon principles of equity, to have acquired the legal title in trust for the defendant land company. This, however, would not obviate the objection of the defendant, because it was the purpose of having the deed deposited in escrow to avoid the possibility of trust relations thus arising, and the necessity of requiring their enforcement so as to obtain the legal title. We think, however, as indicated above, that the conditions of the deed to the Flanagan Estate of themselves subordinated its title to that which would have accrued to the land company through the escrow, had the conditions upon which it was so placed come to pass; hence

we conclude that the second objection is not well asserted.

4. The next objection pertains to the relief sought, it being insisted that the court ought not to decree a strict foreclosure under the conditions prevailing. A forfeiture is not insisted upon here, and, if it were, equity would not enforce it. While it might refuse in many instances to. interfere for the relief of an obligor against forfeiture for breach of an obligation, it will never interpose to declare a forfeiture, that being a matter, if insisted upon, entirely for the law side of the court. The plaintiff, by the act of instituting a suit for a strict foreclosure, recognizes the agreement as still in force and presently subsisting, for its purpose is to get rid of the equity of the land company · by obtaining a decree barring it forever. The plaintiff thereby admits that the land company has an equity in the premises which plaintiff's predecessors by the terms of the contract agreed to convey, but submits that the company should be foreclosed thereof by reason of not having fulfilled the stipulations therein contained upon its part.

5. It was once a mooted question whether strict foreclosure could be at all maintained in this State, in view of the provisions of our statute with relation to the foreclosure of liens (B. & C. Comp. § 423), but it has been settled in favor of the remedy, as applied to contracts for the sale of land, in *Security Sav. Co.* v *Mackenzie,* 33 Or. 209 (52 Pac. 1046), where the lien thereby acquired is differentiated from the lien acquired for the security of some debt, which latter is alone declared to be within the intendment of the statute.

6. By the contract of sale an equitable conversion takes place, the vendee being deemed the owner of the land in equity, and the vendor to have a lien thereon for the purchase money, but at law these relations are not recognized. The lien suggested is known in the books as a " vendor's

lien," but does not exist in this State after title has passed :
*Frame* v. *Sliter,* 29 Or. 121 (45 Pac. 290, 34 L. R. A.
690, 54 Am. St. Rep. 781). Its only existence, therefore,
is upon the idea, which is nearly if not quite a fiction,
that the title has passed when it has not, and that the
vendor retains a lien upon the land which has passed to
the vendee in equitable contemplation, but has not in law
or in reality, the prime fact being that the legal title is
reserved pending compliance on the part of the vendee
with the conditions upon which it is to be conveyed.
"And the so-called 'lien,'" as said by Mr. Justice BEAN
in *Security Sav. Co.* v. *Mackenzie,* 33 Or. 209 (52 Pac. 1046),
"is simply the vendor's right to enforce his claim for the
purchase money against or out of the vendor's equitable
estate"—not his legal estate, for he has none. The con-
version spoken of entails equitable remedies, hence the
vendor may invoke equitable cognizance by foreclosure
to cut off or bar the vendee's interest, it being an equity
of redemption, on the supposition that that is done which
ought to be done.

7. This much being settled, it does not follow, however,
that the court will always declare a strict foreclosure of
the contract. It may also decree a foreclosure by a sale
of the land in the ordinary way, although the title has
not passed from the vendor, dependent upon the exigen-
cies and equities of the case: *Security Sav. Co.* v. *Macken-
zie,* 33 Or. 209 (52 Pac. 1046) ; *Vail* v. *Drexel,* 9 Ill. App. 439.
Mr. Story says: "The usual course of enforcing a lien
in equity, if not discharged, is by a sale of the property
to which it is attached" (2 Story, Eq. Jur., 10 ed., § 1217),
and this in connection with his discussion of the nature
of the vendor's rights and remedies in a case like the pres-
ent. "In this country, as a general rule," says Mr. Justice
BERRY in *Wilder* v. *Haughey,* 21 Minn. 101, 103, "a sale is
almost universally regarded as the just and appropriate

remedy." See also, *Jefferson* v. *Coleman,* 110 Ind. 515 (11
N. E. 465). And, speaking relative to the conditions under
which a strict foreclosure would be proper, Mr. Justice
NORVAL, in *Harrington* v. *Birdsall,* 38 Neb. 176, 186 (56
N. W. 964), says: "The remedy by strict foreclosure of
land contracts cannot be resorted to in all cases. The
remedy being a harsh one, courts of equity will decree a
strict foreclosure only under peculiar and special circum-
stances. Applications of that character are addressed to
the sound legal discretion of the court, and they will be
granted in cases where it would be inequitable to refuse
them. If the vendee or purchaser has not been guilty of
gross laches, nor unreasonably negligent in performing
the contract, a strict foreclosure should be refused on the
ground that it would be unjust, even though the vendee
may have been slightly in default in making a payment.
So, for the same reason, a strict foreclosure will be denied
where the premises have greatly increased in value since
the sale, or where the amount of unpaid purchase money
is much less than the value of the property. On the other
hand, if the vendee, without sufficient excuse, fails to
make his payments according to the stipulations of his
contract, and for an unreasonable time remains in default,
the vendor may have a strict foreclosure of the contract
for the sale and purchase of the land, unless some prin-
ciple of equity would be thereby violated." And this court
has given utterance to a similar view in *Sievers* v. *Brown,*
34 Or. 454 (56 Pac. 171, 45 L. R. A. 642), which is espe-
cially applicable to the case at bar, wherein Mr. Justice
MOORE says: "The justice of the rule announced in Eng-
land and followed in Wisconsin may well be doubted, and
particularly so when the vendor has received a large por-
tion of the purchase money, in which case equity would
seem to demand that the premises be sold to satisfy the
balance due on the contract, upon the payment of which

the vendee should be entitled to the remainder of the money derived from such sale." Thus we find that strict foreclosure is the exception, not the rule, but, if required by the equities of the case, the court will not hesitate to enforce it.

8. Of the stipulated consideration of $50,000, $13,250 has been paid. The balance, if interest for two years be added to it at 6 per cent per annum, would amount to $41,160. Deducting this from the original, we have $8,840, a considerable sum, as the measure of the defendant land company's equity of redemption, if the value of the land remains the same to this time as the estimate the parties put upon it when the agreement was entered into. Assuming that such is the case, there are still other considerations to be taken into account in determining whether there should be a strict foreclosure. It was the intendment of the parties that the agreement should cease to be obligatory upon the vendors when the vendee made default in payment, and at law the stipulation could have been insisted upon. But plaintiff, having gone into equity, must at least do equity, else the court would not grant any relief. Having admitted that defendant was not yet precluded from making payment and acquiring title to the land, the subject of the contract, plaintiff must allow a reasonable time in which to make the payment, otherwise the foreclosure would be tantamount to a declaration of forfeiture, which, as we have seen, equity will not entertain affirmatively.

9. As to what time is reasonable, there appears to be no positive rule, it resting mainly within the sound discretion of the court. Under the English chancery it was six months, and if the debt was large another six months was usually granted: 2 Jones, Mortgages (2 ed.), §§ 1563, 1565; *Vail* v. *Drexel*, 9 Ill. App. 439.

10. While, however, the defendant is conceded still to

have an equity in the premises, it has not sought to reinstate itself by tendering or offering to make the overdue payment, but stands upon technical defenses, though insisting upon the broadest equities. By the agreement, defendant is not obligated to pay anything more if it does not desire to do so, and no deficiency decree can be obtained against it. There is, therefore, not that reciprocity of remedies that ordinarily exists in foreclosure cases, and it is not in as good a position to insist upon the largest latitude possible for its redemption as a debtor resting his equity of redemption upon the legal title. We conclude, therefore, that it would not be inequitable to grant a strict foreclosure in the present case.

11. The decree complained of, however, required the payment by the defendant land company of the full stipulated consideration at a date when part of it had not yet become due, or be foreclosed. This, we are impressed, did not give time enough for that purpose, and, considering the large amount involved, another six months will be allowed from the date of the entry of the decree here in which to make such payment. In all other respects the decree will be the same as rendered by the trial court.

MODIFIED.