## GRACE B. ANDERSON *v.* E. C. HURLBERT AND OLIVE E. HURLBERT.

(219 Pac. 1092.)

**Appeal and Error—Decree in Case of Answer Claiming Equitable Relief in Action at Law Held Final.**

1. Where the purchaser of land sued to recover payments on the ground of rescission, and defendant, under Section 390, Or. L., filed an answer in the nature of a cross-bill in equity for strict foreclosure of the contract, the decree, determining that there was no repudiation by defendant, and refusing the relief prayed by plaintiff, but giving plaintiff sixty days to pay the amount due, whereupon defendant should deliver a deed, was in effect a final determination of the equity suit and law action, which under Section 548 will support an appeal by plaintiff.

Vendor and Purchaser—Repudiation of Contract by Vendor Held not Shown.

2. Evidence in action by purchaser to recover payments made, showing suspension of payments, *held* not to sustain plaintiff's claim of a repudiation of and refusal to perform the contract by defendant, without plaintiff's consent or approval, and without cause.

Appeal and Error—Findings on Oral Testimony Entitled to Great Weight.

3. The evidence being largely oral, on account of loss of correspondence, findings of the court, because of opportunity to observe the witnesses, are entitled to great weight.

Vendor and Purchaser—Purchaser not Entitled to Division of Property or Settlement on Making Part Only of Payments.

4. A purchaser of land, having made part payments on the contract, is not entitled to a division of the property or some settlement by the vendor, whereby the purchaser shall obtain benefit of payments without completing the payments; this involving the making of a new contract.

Vendor and Purchaser—Purchaser Long in Default in Payments Entitled to Nothing More Than Right to a Deed on Payments Within Limited Time.

5. A purchaser, for years in default in making payments under a contract, providing that on her default for thirty days the contract should at vendor's option become null and void, and all rights of purchaser thereunder cease, without right to return of payments made, *held* to get all she was entitled to by decree providing that she might in a limited time make the contract payments and receive a deed.

Vendor and Purchaser—Purchaser, After Informing Vendor of Inability to Make Further Payment, not Entitled to Notice to Effect Forfeiture.

6. The purchaser, by informing the vendor that she would not be able to make any further payments on the contract, abandoned it, so that she was not entitled to further notice by the vendor to effect a forfeiture.

Vendor and Purchaser—Purchaser cannot Rescind and Recover Payments Made, Where Vendor is Able and Willing to Perform in Time Limited.

7. There can be no rescission by purchaser and recovery of payments made, where the vendors are able and willing to perform the contract on their part within the time limited by it.

Vendor and Purchaser—Any Right of Purchaser to Notice Before Exercise of Forfeiture Clause for Default in Payment Held Satisfied.

8. Any further notice that vendor was required to give purchaser before enforcing the forfeiture clause of the contract, because of

---

7. Right of vendee to recover payments made on rescission of contract, see note in **L. R. A.** 1918B, 547.

the fact that when purchaser wrote that she would be unable to make her next installment payment, vendor wrote that he would let the matter stand awhile, was satisfied by vendor, after further defaults, writing that, if she could not make further payments, he would sell the property, and save for her what he could over and above the amount due him.

From Multnomah: J. P. KAVANAUGH, Judge.

Department 1.

Plaintiff instituted an action to recover the sum of $5,897.76 with interest as a repayment of money upon a contract of sale of certain real estate. The defendants answered and set up an equitable defense under Section 390, Or. L. The cause was tried as an equity suit and a decree rendered in favor of defendants foreclosing the contract of purchase and sale. From this decree plaintiff appeals.

The facts shown by the record are substantially as follows: On December 30, 1911, plaintiff, Grace B. Anderson as purchaser, entered into a contract of sale with defendants E. C. Hurlbert and Olive E. Hurlbert, whereby defendants agreed to sell to plaintiff and plaintiff agreed to purchase certain property in Willamette Boulevard Acres, Multnomah County, Oregon, for the sum of $4,550. A stock of millinery was transferred to defendants as a payment of $3,135 on the contract price of the property, which payment was acknowledged in the contract. The contract provided for the payment of the balance in payments of $10 each on the first day of each month after the date of the contract until payment in full. The contract also provided that the purchaser should pay all taxes, public charges and assessments that might become liens on the property, and interest on deferred payments at the rate of 7 per cent per annum. Defendants, the vendors, agreed that upon full payment of the purchase price

they would cause to be executed and delivered to plaintiff a warranty deed to the property.

The contract, which is in the usual form, provided that time should be the essence of the contract; that upon default of the purchaser in making the payments stipulated and "each and every one of them punctually within thirty days of the time limited therefor," or, if the purchaser failed to keep any agreement contained in the contract, same should at the option of the vendor become null and void, "and all rights and interests, created or then existing in favor of the second party" (the purchaser) as against the first party thereunder or to any payments hereon should utterly cease and determine, and the right to the possession of the premises above described and all other rights acquired by the second party thereunder should revert to and revest in said first party without any act of re-entry or any other act of said first party to be performed, and without any right of said second party to return, reclamation or compensation, for moneys paid or received on account of the proposed purchase or sale of said property as absolutely, fully and perfectly as if this contract and such payments had never been made; and in case of such default all payments therefor made on this contract are to be retained and belong to said first party as the agreed reasonable rent of said premises up to the time of such default. And the said first party shall, in case of such default, have the right immediately or at any time thereafter to enter upon the land aforesaid without any process of law, and take immediate possession thereof, together with all improvements and appurtenances thereon or thereto belonging.

Plaintiff immediately began to make her install-
ment payments in accordance with the terms of the
contract and continued these payments beginning
with January, 1912, and continuing until September,
1915, making a total amount of $450 on the principal.
Plaintiff also paid the interest to the amount of
$202.07 and taxes due up to that time and improve-
ment assessments amounting to $293.25. After mak-
ing the last installment payment, September 1, 1912,
on September 3, 1915, plaintiff wrote to defendant
E. C. Hurlbert and informed him that she would not
be able to make her next installment payment. This
letter is not in evidence. It appears to have been
lost. In a letter written by defendant E. C. Hurl-
bert to plaintiff on September 10, 1912, reference
is made to the letter of plaintiff of September 3d.
In this letter (from defendant Hurlbert to plaintiff)
he expressed regret that the plaintiff was unable to
make the payments and said:

"I do not know what kind of proposition I can
make you, Mrs. Anderson, only to say that we will
let it run a while and see if you cannot turn your
equity or make a raise and pay up and hold it."

From this juncture there is some controversy as
to the correspondence. Defendant Hurlbert testi-
fied to the effect that plaintiff in answering his letter
stated that she had property willed to her and it
would take all of her ready money to care for it;
that she would not put any more money in the St.
John's property and asked Mr. Hurlbert what propo-
sition he could make her; that he answered that he
would endeavor to sell the property and if he could
realize any more than was due him he would give
her such funds. Nothing further was heard from
plaintiff for a period of about three years. No pay-

ment of taxes, street assessments, interest or principal was made, or offered to be made by plaintiff after September, 1915. On October 29, 1915, plaintiff sent a letter of inquiry to E. C. Hurlbert and at the close stated, ''Let me know your disposition then I will make my own plain.'' F. C. Schaffer, an attorney at Los Angeles, California, answered this letter for Mr. Hurlbert calling plaintiff's attention to her neglect and former disposition and stated:

''Mr. Hurlbert was therefore compelled to exercise the forfeiture clause in the agreement several years ago and considered the matter then closed.''

He also stated:

''As several years have elapsed since former activity on the contract, I am of the opinion no action upon Mr. Hurlbert's part could rightfully be expected.''

Plaintiff stated that for a little over a year she was unable to make any further payments on the contract; that beginning about January 1, 1917, she began writing to defendant in order to continue her payments; that defendant ignored these letters; that finally on October 29, 1918, plaintiff wrote to defendant the letter which is in evidence stating that she wanted to pay up what was due on the contract and to obtain a deed.

In disposing of the stock of millinery, the defendants obtained the sum of $750, which, together with the monthly payments paid by plaintiff, taxes and street improvement assessments amounted to $1,547.96 paid on the property. The contract of purchase between the parties provided that all monthly payments called for under the terms of the contract should be made at St. Johns, Oregon, and

109 Or.—19

those that were made by plaintiff were paid at that place to the agent of defendants. In November, 1919, a year after receiving the Schaffer letter, plaintiff filed a complaint and predicated a case on the theory that defendant had disposed of the property to a third person and for that reason demanded a return of her money. Afterward, defendant tendered a deed of the property to the plaintiff and demanded payment according to the terms of the contract. Payment not having been made, defendant filed an answer in the nature of a cross-complaint in equity asking for a strict foreclosure of the contract. Whereupon plaintiff was allowed to file an amended complaint alleging that in November, 1918, defendants expressly repudiated and rescinded the contract without the consent or approval of the plaintiff and refused to perform their obligations under the contract, or to recognize the contract and claimed a mutual rescission.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Yates & Lewis,* with an oral argument by *Mr. Jay L. Lewis.*

For respondents there was a brief and oral argument by *Mr. G. Evert Baker.*

BEAN, J.—1. As a preliminary question defendants renewed their motion to dismiss this appeal for the reason that they assert that the decree of the trial court was not final on account of the provision for the plaintiff to have sixty days within which to pay the balance due on the contract and after such payment is made the defendants should deliver to plaintiff a deed of the premises.

The answer of defendants was filed under Section 390, Or. L., for the purpose of obtaining equitable relief arising out of the facts in the case and requiring the interposition of a court of equity and is material to the defense of defendants. The real question determined by the trial of the cause as an equity suit by virtue of Section 390, Or. L., was whether the defendants had wrongfully refused to perform the contract upon their part, thereby entitling the plaintiff to accept such refusal as a rescission of the agreement, making such rescission mutual. The court determined that there was no repudiation of the contract upon the part of defendants, and refused to grant the plaintiff the prayed for relief. The decree had the effect of determining the gist of the whole controversy and was "an order affecting a substantial right, and which in effect determines the action or suit so as to prevent a judgment or decree therein" within the meaning of Section 548, Or. L., and makes the decree an appealable order. In other words, the decree is, in effect, final and the provision for payment of the amount due upon the contract, is in the nature of a provision for a redemption of the property. We are firmly of the opinion that the decree of the lower court, was not only a final determination of the equity suit but that it also determined the law action, as well.

Where an answer setting up facts entitling the defendants to equitable relief, is interposed in a law action by virtue of the provision of Section 390 the issues raised are determined, and the proceedings at law are perpetually enjoined, as in the case at bar, the whole controversy being settled and determined by the decree, then there is no necessity or require-

ment that the law action should be allowed to proceed or that the cause should be tried twice: *Crossen* v. *Campbell,* 102 Or. 666 (202 Pac. 745); *Mendelsohn* v. *Mendelsohn,* 104 Or. 281, 285, 287 (207 Pac. 158); *McCann* v. *Oregon Scenic Trips Co.,* 105 Or. 213, 220 (209 Pac. 483). This conclusion disposes of the motion to dismiss, and also the contention of plaintiff that the court erred in not allowing the action at law to proceed; that is, if the conclusion of the trial court was correct. This brings us to the main question in the case.

2. Plaintiff as the basis of her claim asserts that the defendants expressly repudiated and rescinded the contract without the consent or approval of the plaintiff, and without cause refused to perform their obligations thereunder. It therefore, became incumbent upon the plaintiff to prove that allegation. A careful reading of the testimony convinces us that in this she has failed; that the testimony preponderates the other way.

It is written large in the record, that a short time after Mrs. Anderson made her last payment on the contract on September 1, 1915, she was unable or unwilling to make further payments and so informed the defendant E. C. Hurlbert. This was a disappointment to defendant Hurlbert and in his letter, in evidence, he clearly expressed a wish that the plaintiff would endeavor to make arrangements to keep up her payments on the contract. In his letter of September 10, 1915, in answer to plaintiff's letter of the 3d of that month he states, ''I am sorry that you find yourself so that you are unable to make these payments; I am sure I would rather you keep the payments up as I figured on using what I got from you to pay on some I am paying

on.'' It is plain from this letter that Mr. Hurlbert understood the plaintiff to state in her letter that she was unable to make her payments. Mrs. Anderson does not appear to have attempted in any way to change this impression that was so plainly stated to her in defendant's letter. Plaintiff did not ask for further time to make payment. A statement of defendant to the effect that he would let the matter run for a while and see if Mrs. Anderson could not make a raise and pay up, was voluntary and left the matter in such an unsettled condition that it gives credence to the testimony of defendant, E. C. Hurlbert to the effect that afterward he wrote to Mrs. Anderson accepting her proposition to abandon the contract and stating that he would sell the property and save for her what he could over the amount due to him.

3. Moreover, the trial court had an opportunity to observe the witnesses on the stand and to determine the question which the learned trial judge designated as difficult on account of the large part of the correspondence between the parties not having been preserved and the parties having to rely upon memory. Therefore, the findings of the trial court on this point are entitled to great weight.

4. More than three years before this cause was instituted the defendant, Hurlbert, expressed to plaintiff a wish that she complete her payments on the contract. This was after the plaintiff had indicated that she would not be able to make her next payment of October 1, 1915. Ever since that time the plaintiff has evinced a persistent desire that the defendant make some division of the property or some settlement of the matter so that she could obtain a benefit of the payments made on the con-

tract without completing the payments. This involved the making of a new contract which the defendants were not obliged to enter into, and which the court is not warranted in making for the parties.

Mrs. Anderson complained that in 1917 she was unable to communicate with defendant Hurlbert. There was nothing to prevent her from making the further payments at St. Johns, Oregon, where she made her other payments, and thereby stop interest if she had wished to do so. She stated that about a year after the first default she was able to make the payments in full. It appears from the record that in February, 1917, Mrs. Anderson was in Los Angeles, California where defendant Hurlbert was employed and called at his company's office and was informed he was out of town. She stated after that she wrote to him. She testified thus—

"Q. What did you tell him?
"A. I asked again in the same manner as I did in that first letter he answered, for some settlement we could make."

On the other hand, the defendants appear to have been ready and anxious to receive the money due on the contract as long as there was any prospect of Mrs. Anderson fulfilling her agreement. There was no wrongful attempt on the part of defendants to terminate the contract of sale.

5. Notwithstanding plaintiff's default for more than three years, the defendants offered her a deed to the property upon her making the contract payments. And the decree of the Circuit Court provided that she should have a specified time to do so. Under the law, and in equity, this is all that plaintiff can reasonably expect.

The plaintiff is attempting to take advantage of her own failure to perform the conditions of her contract to purchase. Ever since her letter of September 3, 1915 she has failed to make or tender any payment on the contract and has repeatedly endeavored to make some arrangement or new contract so as to salvage something on account of the stock of millinery traded to defendants and the payments made in connection with the contract. The real amount involved is the reasonable value of the stock of goods traded plus the amount paid pursuant to the contract: *Blahnik* v. *Small Farm Implement Co.,* 181 Cal. 379 (184 Pac. 661). We mention the latter matter as having some bearing on the equity of the case. There is little controversy in regard to the law. The general rule is that where the parties to a contract mutually agree to rescind the same, there being no express stipulation with reference to the payment or payments made thereunder, the law will imply a promise on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same. Where a contract for the sale of land is rescinded by the vendor, the purchaser is ordinarily entitled to repayment of the purchase money paid and may maintain an action against the vendor to recover the same. So where the vendor does some act which amounts to a rescission of the contract the purchaser may recover back the payments made by him. However, the terms of the contract itself or the purchaser's own conduct or default, may work a forfeiture of such payments thereby depriving the purchaser of his or her right to recover the purchase money paid: 39 Cyc. 2002, 2004; 24 R. C. L. 276, § 555; *Maffet* v. *Oregon & C. R. R.*

*Co.,* 46 Or. 443 (80 Pac. 489); *Massey* v. *Becker,* 90 Or. 461 (176 Pac. 425); *Cornely* v. *Campbell,* 95 Or. 345 (186 Pac. 563, 187 Pac. 1103). In *Cornely* v. *Campbell, supra,* a case upon which plaintiff relies, at page 353 of 95 Or. (186 Pac. 566), we find the language of Mr. Justice BURNETT as follows:

"On the other hand, if the purchaser is in default and that default has not been waived by the vendor, and the vendor rightfully and in accordance with the law and the terms of the contract, declares a forfeiture of the same, where the contract makes time of the essence of the contract, and provides for a forfeiture of the payment, the purchaser cannot recover back the payment already made, in an action of this kind."

6. When Mrs. Anderson, the purchaser informed Hurlbert, the vendor, that she would not be able to make any more payments the vendor was not required to give the purchaser further notice in order to effect a forfeiture. The plaintiff, Mrs. Anderson, by the abandonment of the contract waived her right to further notice. To require a notice after such abandonment would be an idle ceremony: *Epplett* v. *Empire Investment Co., Inc.,* 99 Or. 533, 543 (194 Pac. 461, 700); *Mitchell* v. *Hughes,* 80 Or. 574 (157 Pac. 965). The writing of the letter by Mrs. Anderson informing Hurlbert, the vendor, that she would not make further payments constituted an abandonment of the contract by her as the vendee: 39 Cyc. 1353; *Kemmerer* v. *Title & Trust Co.,* 90 Or. 137, 146 (175 Pac. 865).

7. There can be no rescission and recovery of the purchase price by Mrs. Anderson, the purchaser, where the Hurlberts, the vendors, are able and willing to perform the contract on their part within the time limited by the contract as the defendants

are shown by the record to have been in the present case: 39 Cyc. 2006.

8. It is urged by the plaintiff that the Hurlberts could not enforce the forfeiture clause of contract without giving Mrs. Anderson, the purchaser, further notice of his intention, making a demand for payment and giving a reasonable time to comply, as he had by his letter of September 10, 1915, written to her that he would let the matter stand for a while, citing *Maffet* v. *Oregon & C. R. R. Co., supra,* and other decisions. That letter related to the October, 1915, payment. Several other defaults of plaintiff followed. This contention is answered by the findings which we have made to the effect that the defendants, Hurlberts, did write to Mrs. Anderson, the purchaser, in substance that if she could not make the payments he would sell the property and save for her what he could over and above the amount due him. It therefore, appears that she had ample notice, about three years, before this proceeding was instituted. In the case of *Ward* v. *James,* 84 Or. 375 (164 Pac. 370–372), in the opinion on petition for rehearing, page 383 of 84 Or. (164 Pac. 372), Mr. Justice McCAMANT used the following language:

"In order to put the vendor in default and claim a rescission of the contract the vendee must be ready to pay the entire purchase price, must offer so to do and demand a deed." (Citing authorities.)

In *Newell* v. *E. B. & A. L. Stone Co.,* 181 Cal. 385 (184 Pac. 659, 9 A. L. R. 993), the syllabus reads:

"The vendee in default on a contract for purchase of real estate cannot place the vendor in default, so as to be entitled to recover payments made, by

merely remaining quiet, without tender of amount due, upon receiving notice that the balance due must be paid at once, or the payments made will be forfeited.''

The written contract in the present case plainly provides that if Mrs. Anderson should fail to make the payments or to keep her agreement, the contract should, at the option of the Hurlberts, become null and void and all rights and interests of Mrs. Anderson, under the contract, or in any payments made on the contract were to be retained by, and belong to the Hurlberts.

It follows that the decree of the lower court should be affirmed. The time for the plaintiff to make payment of the amount due on the contract should be for 60 days from the entry of the mandate in the Circuit Court. That court should have the right to extend such time upon good cause being shown as indicated in the decree of the trial court. It is so ordered.

MOTION TO DISMISS APPEAL DENIED.    AFFIRMED.

McBRIDE, C. J., and HARRIS and RAND, JJ., concur.