Argued April 22; modified May 18; rehearing denied
July 7, 1937

## McCRACKEN *v.* WALNUT PARK GARAGE, INC., ET AL.

(68 P. (2d) 123)

*Reuben G. Lenske*, of Portland, for appellants.

*Arthur H. Lewis*, of Portland (Lewis, Lewis & Finnigan and F. E. Wagner, all of Portland, on the brief), for respondents.

BEAN, C. J. This is a suit to foreclose a contract of sale and purchase of real property. F. E. Speidel, together with J. F. Shea, originally built the building at the corner of Union avenue and Portland boulevard. Each owned an undivided one-half interest in the property. In 1923, Speidel contracted to sell his one-half interest to T. F. Bradshaw and R. A. Steinegger. Walnut Park Garage, Inc., is an Oregon corporation organized by Mr. Bradshaw and Mr. Steinegger in 1923 to take over the Walnut Park Garage. This corporation succeeded to the vendee's interest in the undivided one-half interest in the garage property, which was contracted to be sold in 1923 by F. E. Speidel to Mr. Bradshaw and Mr. Steinegger.

On November 15, 1927, the Walnut Park Garage entered into a new contract with Mr. Speidel by which the corporation purchased his one-half interest. The original purchase price for the one-half interest mentioned in the contract in 1923, $10,200, was inserted in the new contract, and there was credited thereon $6,543.50 on the date of execution, the remainder to be paid at the rate of 6 per cent interest in monthly payments of not less than $100 on the 15th day of each month until fully paid. It is stated that the original price of the undivided one-half interest was $9,200, although $10,200 was mentioned in the contract, that $1,700 was credited on the contract and only $700 paid, making the actual price $9,200. The purchasers entered into possession of the entire building, and the arrangement to pay F. E. Speidel the required installment payments on the purchase of the undivided one-half interest, and to J. F. Shea $75 per month, as rent, for the other undivided one-half interest, continued until the death of Mr. Bradshaw, husband of Verona B. Bradshaw, in 1927. This condition of affairs remained about the same until May, 1934, when J. F. Shea Company, an Oregon corporation, through C. J. McCracken, an employee, purchased from F. E. Speidel his undivided one-half interest, subject to the contract of purchase, and took an assignment of the contract to purchase the undivided one-half interest. The deed to the undivided one-half interest from Speidel to McCracken was recorded June 1, 1934. At the time of taking over the contract to purchase there was due on the principal of the contract price $2,615, with interest at the rate of 6 per cent from April 18, 1934. There was also due taxes advanced and paid by the J. F. Shea Company in the sum of $376.45 and insurance premiums of $73.25,

the total of which amounts was paid at the foreclosure sale by C. J. McCracken, for the undivided one-half interest.

At the time of taking over the contract of sale the defendants had practically stopped paying rent, although the rent had been reduced from $90, in 1929, to $25 a month at that time. For the year 1932 there was an unpaid balance for defendants' half of taxes in the sum of $30.43, for the year 1933, $172.09, and for the year 1934, $173.93. On taking over this contract to purchase the matter was placed in the hands of J. F. Shea Investment Company's attorneys for attention. On June 2, 1934, the attorneys notified the Walnut Park Garage of the purchase of the contract of the undivided one-half interest by C. J. McCracken and requested that all arrears on this contract be put in good standing on or before July 2, 1934. By request of the attorney for defendant Walnut Park Garage, the attorneys for J. F. Shea Investment Company advised that they were willing to give the Walnut Park Garage until August 1, 1934, at the same time notifying them that if the terms of the contract had been followed the full amount due thereon would have been paid in January, 1931, instead of only $1,041.50. On October 30, 1934, another letter was written to the Walnut Park Garage advising the parties that, unless all payments due on the contract were taken care of on or before November 20, suit for strict foreclosure would be commenced. The vendees informed the plaintiff, in substance, that they were unable to pay the amount due on the contract, or any more than they had paid. After the expiration of this period, and on November 22, 1934, complaint was filed, asking for strict foreclosure. Sometime afterwards attention was called to the fact that Verona B. Brad-

shaw had had assigned to her as security for salaries and advancements to the corporation all the assets of this corporation, tools and equipment, accounts receivable and contract to purchase the undivided one-half interest, and that Verona B. Bradshaw was claiming to be the owner of the undivided one-half interest. Thereupon an amended complaint was filed on June 20, 1935. At that time plaintiff tendered and placed in the hands of the clerk of the court a deed to the undivided one-half interest deliverable to defendants for payment of the balance due under the contract.

Upon the trial, November 8, 1935, and after consideration thereof on December 6, 1935, the court made findings and rendered a decree. The court found there was due on the contract to purchase the principal sum of $2,615, interest approximately $249.89, taxes $376.45, insurance $73.25, making a total of $3,314.59, and rendered a decree foreclosing said contract of sale, the proceeds thereof to be applied to the satisfaction of the amount due plaintiff on said contract to purchase, and the balance, after paying costs, as the court might direct; that said undivided one-half interest in the property contracted to be sold and purchased, be sold by the sheriff of Multnomah county, state of Oregon, in the manner and form prescribed by law for the sale of real property upon execution, to pay the amount due on the contract; "that said sale be subject to confirmation by the court and that the defendant Walnut Park Garage, Inc., and Verona B. Bradshaw, also known as Vera B. Bradshaw, their successors, heirs, administrators and assigns, or either of them, have ninety (90) days time from and after the confirmation of said sale within which to redeem said property from said sale upon the payment to the sheriff of Multnomah county,

Oregon, the amount for which said property was sold". Further, the court found that from and after the expiration of 90 days from the date of confirmation of the sale by the court, the sheriff will execute and deliver a good and sufficient sheriff's deed conveying title to the said undivided one-half interest to said purchaser, and that the defendants and all persons claiming under them be forever barred and foreclosed of all rights in and to the said premises. At the foreclosure sale plaintiff purchased said undivided one-half interest for the amount due on the contract.

Defendants contend that the court erred in failing to find that a rescission occurred entitling defendant Walnut Park Garage, or its grantee, to repayment of the sums paid to the vendor of the property, plus interest from the dates of payments, less the reasonable rental value of the property.

■ As stated by Mr. Justice RAND in *Atkochumas v. Gustafson,* ante p. 126 (66 P. (2d) 1192), which is determinative in this case:

"It is well settled in this state that a vendor is entitled to the relief of strict foreclosure where the vendee fails to comply with the terms of his contract in the payment of the purchase price. It was so held in the following cases: Security Savings & Trust Co. v. Mackenzie, 33 Or. 209 (52 P. 1046); Sievers v. Brown, 34 Or. 454 (56 P. 171, 45 L. R. A. 642); Wollenberg v. Rose, 41 Or. 314 (68 P. 804); Flanagan Estate v. Great Cent. Land Co., 45 Or. 335 (77 P. 485); Higinbotham v. Frock, 48 Or. 129 (83 P. 536, 120 Am. St. Rep. 796); Miles v. Hemenway, 59 Or. 318 (111 P. 696, 117 P. 273); Lyons v. Chaffee, 79 Or. 485 (154 P. 688); Cornely v. Campbell, 95 Or. 345 (186 P. 563, 187 P. 1103); Sheehan v. McKinstry, 105 Or. 473 (210 P. 167, 34 A. L. R. 1315); Anderson v. Hurlburt, 109 Or. 284 (219 P. 1092); Anderson v. Morse, 110 Or. 39 (222 P. 1083); Turnbow v. Keller, 142 Or. 200 (12 P. (2d) 558, 19 P. (2d) 1089)."

■ Defendants failed to pay the amount due on the contract or to pay the taxes for a long time. They were notified at different times of the necessity of making the payments and had sufficient time to do so if they had been able. They were not financially able to make the payments, and, in substance, so informed the vendor.

■ The bringing of the present suit was not a rescission of the contract, but the enforcement thereof. The bringing of a suit for strict foreclosure of a contract of sale of real estate is not a disaffirmance of the contract, but an affirmance of the contract which the parties are seeking to enforce. This is not a suit to cancel or rescind the contract where the relief, if granted, would have the effect of terminating the contract, but is a suit brought to enforce a contract right which can only exist if the contract is still in force: 3 Black on Rescission (2d Ed.), § 576.

The present case is a stronger one than *Atkochunas v. Gustafson,* supra, as to the leniency of the vendor. In the case at bar plaintiff and his assignor gave the vendee due and reasonable notice to pay the contract and gave reasonable time in which to do so. For about five months an effort was made to have the vendee comply with the contract: *Massey v. Becker,* 90 Or. 461 (176 P. 425); *Graham v. Merchant,* 43 Or. 294 (72 P. 1088).

■ Plaintiff, as shown by the record, tendered full performance, and was ready, able and willing to perform all the terms of the contract on his part. There can be no rescission and recovery of the purchase price by the vendee where the vendor is able and willing to perform: *Anderson v. Hurlburt,* supra; *Turnbow v. Keller,* supra; Anntotation, 59 A. L. R. 190.

■ Appellants claim there should have been a sale of the whole property. Appellant Bradshaw, the vendee,

had an interest only in a part of the property and not in the whole. The appellants were not entitled to have sold the property of the J. F. Shea Investment Company, the other undivided one-half interest, which is not involved in the contract or suit. If they had sold the whole property it would have been equal to a partition of the real property. The vendors' title being in the nature of a lien, the ordinary mode of enforcing such lien in equity would be a sale of the interest to which it attached: 66 C. J. 1325, § 1286; *Flanagan Estate v. Great Central Land Co.*, 45 Or. 335, 343 (77 P. 485). In the opinion in the latter case, it is stated, in substance, that the court will not always declare a strict foreclosure of the contract. It may also decree a foreclosure by a sale of the land in the ordinary way, although the title has not passed from the vendor, dependent upon the exigencies and equities of the case.

■ Defendants claim that they made improvements and repairs on the concrete building which was on the property and were entitled to compensation therefor. Defendants' right to such credit depends upon their right to rescission, to which they are not entitled.

The contract foreclosed in this case provides:

"But in case the said party of the second part shall fail to make the payments aforesaid, or any of them punctually and upon the strict terms, and at the times above specified, the time of payment being declared to be of the essence of this agreement, then the parties of the first part shall have the right to declare this agreement null and void; * * * and the premises aforesaid shall revert and revest in the parties of the first part without any declaration or forfeiture or act of re-entry, or without any other act by said parties of the first part to be performed and without any right of the said party of the second part of reclamation or

compensation for money paid or for improvements made, as absolutely, fully and perfectly as if this agreement had never been made.''

See *Gray v. Mitchell,* 145 Or. 519, 526 (28 P. (2d) 631); *Thrift v. Laird,* 115 Or. 489 (237 P. 689).

In a suit for strict foreclosure the court may either decree a strict foreclosure or a sale of the land, although a strict foreclosure may be prayed for, or vice versa. Wiltsie on Mortgage Foreclosure (3d Ed.), §975; *Security Savings & Trust Co. v. Mackenzie,* supra; *Vance v. Blakeley,* 62 Or. 326, 330 (123 P. 390). In the latter case, it is stated:

''While it has been settled in this state that in a proper case a decree of strict foreclosure of such a contract may be rendered, it does not follow that the court will always decree such a foreclosure. It may also decree a foreclosure by a sale of the land in the ordinary way, although the title has not passed from the vendor.''

The circumstances in regard to the one-half interest involved are somewhat complicated, and under all of the facts of the case we think the defendants should be allowed six months after the date of the entry in the lower court of the mandate of this court within which to pay the amount due plaintiff and redeem said property, and in the event of failure to do so their rights in the property and contract should be cancelled and foreclosed as provided in the decree of the lower court.

With this modification the decree of the circuit court will be affirmed. No costs will be allowed to either party in this court.

BAILEY, RAND and CAMPBELL, JJ., concur.